## In re ESTATE OF HOWARD.

No. 16164. Opinion Filed March 23, 1926.

Rehearing Denied Dec. 21, 1926.

Application to File 2nd Petition for Rehearing Denied May 24, 1927.

1. Adoption—Liberal Construction of Statute—Collateral Attack on Adoption.

Our statute providing for the mode of adoption should be construed with a reasonable degree of liberality, where the adoption has been fully consummated, to the end that the assumed relationship, and the intention of the contracting parties, be upheld, as against strangers to the proceedings collaterally attacking same.

2. Same—Oral Consent and Acquiescence of Mother—Sufficiency.

Where an adoption proceeding is collaterally attacked, upon the ground that the mother of the adopted child did not give her written consent, it is permissible to show by extrinsic evidence that she gave her oral consent at the time of the adoption, and has at all times since acquiesced in, and ratified the adoption.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Osage County; Jesse J. Worten, Judge.

In the matter of the estate of Sam Howard, deceased, and petition by Bertha Myers against Nancy Hurd et al. Judgment for plaintiff, and defendant brings error. Affirmed.

M. L. Holcombe and Clarence Lohman, for Nancy Hurd.

Chas. B. Wilson, Jr., and W. L. Coffey, for Bertha Myers.

Opinion by JONES, C. This suit originated in the county court of Osage county, Okla., in an administration proceeding pending in said court by the filing of a petition on the part of Bertha Myers against Nancy Hurd et al., wherein she, the said Bertha Myers, claims to be the sole and only heir of Sam Howard, deceased, by reason of the fact that she was the adopted daughter of the said Sam Howard, and asks that the entire estate be set apart and delivered to her as such heir.

Upon the trial of the case to the county court, judgment was rendered in favor of the defendant Nancy Hurd and against the plaintiff, Bertha Myers, upon the theory that the adoption proceedings were null and void. From this judgment of the county court an appeal was taken to the district court of Osage county, and upon the hearing of the case in the district court, judgment was rendered in favor of the plaintiff, Bertha Myers, and against the defendant Nancy Hurd, upholding the adoption proceedings, and decreeing the said Bertha Myers to be the sole and only heir of Sam Howard, deceased, and from this judgment of the district court the appellant prosecutes this appeal, and assigns as error the refusal of the court to sustain the demurrer of the defendant to the evidence of plaintiff, the insufficiency of the evidence to support the judgment, that the judgment is contrary to law, and the refusal of the court to sustain motion for new trial. All of these contentions, however, are to be determined by the one proposition of whether or not the adoption proceedings were valid or invalid.

The record discloses that Bertha Myers, nee Howard, was born and reared in the state of Kentucky, and that when she was about nine years of age her mother and father separated, and she was brought by her mother to Osage county, Okla., and there left, temporarily in charge of her grandmother, Nancy Hurd, and her uncle, Sam Howard. Birdie Howard, mother of Bertha Howard, subsequently moved to Lincoln county, Okla., and there married a man by the name of Robinson, and soon thereafter went to Osage county and procured her daughter, Bertha Howard, and took her to live with her, the said Birdie Robinson, nee Howard, in her home in Lincoln county. Subsequent to the marriage of Birdie Howard, the mother, to Robinson, the former husband, William Howard, father of Bertha Howard, removed to Osage county, Okla., where his mother, Nancy Hurd, and his brother, Sam Howard, resided. Soon after his removal to Osage county, William Howard, in company with Sam Howard, deceased, visited his former wife, Birdie Robinson, nee Howard, in Lincoln county, and arranged with the said Birdie Robinson for their daughter, Bertha Howard, now Bertha Myers, to be adopted by her uncle, Sam Howard, and this arrangement was agreed to by the mother, Birdie Robinson. Pursuant thereto the said Birdie Myers, nee Howard, accompanied her father, William Howard, and her uncle, Sam Howard, to Osage county, and a short time thereafter the said Sam Howard filed an application or petition in the county court of Osage county, asking that he be permitted to adopt the said Bertha Myers, nee Howard, as his daughter, and thereafter the county court made an order wherein the said Bertha Myers, nee Howard, was duly adopted as the daughter of Sam Howard, now deceased. The adoption proceedings are now attacked by Nancy Hurd, the mother of Sam Howard, and al-

leged to be invalid for the reason that the consent of the mother was not given as required by section 8046, C. S. 1921, which is in part as follows:

"A legitimate child cannot be adopted without the consent of its parents, if living. * * *"

And the only question here involved is whether or not this particular provision of the statute was substantially complied with. The evidence introduced on the trial of the case substantially shows the facts concerning the child's life and condition as heretofore portrayed, and the mother, Birdie Robinson, was called as a witness and testified to the agreement made with the father, William Howard, concerning the adoption of the daughter, Bertha Myers, nee Howard, by her uncle, Sam Howard, and testified that she consented to the adoption and has at all times since acquiesced and ratified the same. Section 8050, C. S. 1921, contains the following provision:

"The person adopting a child and the child adopted and the other persons, whose consent is necessary, must appear before the county judge, of the county where the person adopted resides, and the necessary consent last thereupon be signed."

This provision of the law was not literally complied with. The mother, Mrs. Robinson, was not present at the time the adoption proceedings were had. The father, William Howard, and the foster father, Sam Howard, were present, and we are inclined to the opinion that the proceedings had were substantially in compliance with the statute and sufficient as against the attack here made. The principal purpose of the statute is that the consent be given, and not the manner in which it may be given.

In volume 1, R. C. L. par. 4, pages 595-6, the rule is stated as follows:

"4. Rule of Construction of Statutes. Inasmuch as statutes providing for a procedure or method by which one person may be adopted as the child of another are in derogation of the common law, many courts have asserted that such enactments should be construed strictly. But even in these jurisdictions a distinction has been drawn between the construction of the statute and of the act of adoption itself, and it has been held that the act of adoption must be liberally construed in favor of the child adopted. And it has also been decided that while there must be substantial compliance with the provisions of the statute, yet its construction should not be so narrow and technical as to invalidate proceedings where every material provision has been complied with, and it can certainly be said that the construction must be reasonable and must fairly give effect to the intent of the Legislature. The courts of other jurisdictions have, however, ruled that such statutes should be given a liberal intendment and operation. It has been said that adoption statutes tend to conserve the best interests of society and the state, and that, recognizing these good results, courts are more and more inclined to abandon the old rule of strict construction and to place a fair and reasonable construction upon proceedings under a statute relating to adoption, with a view of sustaining the assumed relationship, particularly against a collateral attack by strangers to the proceedings, whose only interest is to defeat the relations which the adoptive parents always recognized and never questioned, so that they may succeed to an estate from which, by the very fact of adoption, the adoptive parents intended they should be excluded in favor of the adopted child. A provision of a state code that the statutes of the state are to be liberally construed must be given due effect in construing an adoption statute. * * *

"* * * It is not the duty of the courts to bring the judicial microscope to bear upon the case in order that every slight defect may be enlarged and magnified so that a reason may be found for declaring invalid an act consummated years before, but rather to approach the case with the inclination to uphold such acts, if it is found that there was a substantial compliance with the statute. * * * Notwithstanding the technical requirements of a statute relating to adoption, it has been ruled that an adoption which has in fact been followed up by a severance of the natural ties of the child, and its residence with the adopting parents, may be shown by the oral agreement of the parents or person in loco parentis and the adopting parent."

This rule favors a liberal construction of statutes, such as we here have under consideration, and such a construction as will uphold the relation and protect the interest of the adopted child, in such manner as will carry out the intention of the person adopting.

In the case In the Matter of Johnson, 98 Cal. 531, 23 Pac. 460, the Supreme Court of California quotes from the case of People v. Supervisors, 34 N. Y. 272, as follows:

"Where the statute directs an act to be done in a certain way, or at a certain time, and a strict compliance as to the time or form does not appear to the judicial mind to be essential, the proceedings are held valid, though the command of the statute has been disregarded."

And in the case of Nugent v. Powell (Wyo.) 33 Pac. 23, in discussing a similar question, the court said:

"And hence it seems to me that in cases

of this kind, it is not the duty of the courts to bring the judicial microscope to bear upon the case in order that every slight defect might be enlarged and magnified, so that a reason might be found for declaring invalid an act consummated years before, but rather approach the case with the inclination to uphold such acts, if it is found that there was a substantial compliance with the statute."

This rule we think bears with considerable force upon the facts in this case, as it is disclosed by the record that Bertha Myers, nee Howard, after her adoption went to the home of Sam Howard and lived with him continuously from the time she was about ten years of age to the date of his death, at which time she was past 19 years of age, and had lived on a farm, keeping house for her uncle and assisting him in every way possible in maintaining the home, and in the accumulation of the property which he possessed at the time of his death, and no one who has any legal right, or had any legal right at the time of the adoption to be consulted or heard, has ever made any complaint at any time. There seems to be no controversy as to the intention of the deceased, Sam Howard, or as to the intention of the mother, Mrs. Robinson, or the father, William Howard, at any time, and their intentions seem to have been carried out and consummated in the fullest possible manner, and no equitable reason existed why this relation should be disturbed at this time, and we are inclined to the opinion, under the authorities cited, that the adoption proceedings were sufficient, and clearly not subject to a collateral attack such as is here made.

In vol 1, R. C. L. section 40, page 628, the author in discussing the effect of judgment or order of adoption announced:

"If an order of adoption entered by a court having jurisdiction is questioned collaterally, extrinsic evidence is admissible for the purpose of proving any matter, the existence of which was necessary to the validity of the order, in the absence of a statutory requirement that such facts appear in the record of the proceeding."

And in section 41, Id., announces the following rule:

"There is authority to the effect that the failure of the court which entered the decree of adoption, to obtain jurisdiction over the father of the minor, renders the decree void, and lays it open to collateral attack by any person interested, and that in such case the parties to the proceeding are not estopped to deny its validity, since the father is not bound, and estoppels must be mutual. But the more approved rule is that the adoption proceedings are conclusive as to persons who were parties thereto, and

their privies, notwithstanding a defect as to a party who would be entitled to disregard them as not binding upon him, but who does not complain of his nonjoinder. As has been very pertinently pointed out, no rights of the parent of the child would be impaired by giving force and effect to the contract of adoption, and permitting the child to succeed to the estate of the adoptive parent as the adopted child of the latter."

And in the case of In re McKeag's Estate, 99 A. S. R. 80, 74 Pac. 1039, in a discussion of the matter here involved, the Supreme Court of California said:

"Recognizing these good results, courts are more and more inclined to an abandonment of the old rule of strict construction, and to place a fair and reasonable construction upon the proceedings under the statute, with a view of sustaining the assumed relationship, particularly against a collateral attack by strangers to the proceedings, whose only interest is to defeat the relations which the adoptive parents always recognized and never questioned, so that they may succeed to an estate from which, by the very fact of adoption, the adoptive parents intended they should be excluded, in favor of the adopted child.* * *"

Many authorities might be cited bearing to some extent upon the questions here involved, but we deem the citations given sufficient, and are inclined to the opinion that the judgment of the trial court in upholding the adoption proceedings, and decreeing the appellee here to be the sole and only heir of Sam Howard, deceased, is correct, and the judgment appealed from is therefore affirmed.

By the Court: It is so ordered.

Note.— See under (1) 1 C. J. p. 1374 §5; 1 R. C. L. pp. 595, 596; 1 R. C. L. Supp. p. 209; 4 R. C. L. Supp. p. 42; 5 R. C. L. Supp. 35. (2) 1 C. J. p. 1394 §113; anno. 30 L. R. A. (N. S.) 146; 24 A. L. R. 416; 1 R. C. L. p. 607; 1 R. C. L. Supp. p. 211; 4 R. C. L. Supp. 43; 5 R. C. L. Supp. 35.