In a probate cause pending in the county court of Osage county, in the matter of the administration of the estate of Cecil R. Martin, deceased, the administrator made application for the fixing of a family allowance for maintenance of the family. That court made an allowance for the widow, for a natural son by a former marriage, and for two adopted daughters, all three children being minors.
In behalf of the minor son an appeal was taken to the district court as an attack on the allowance made to the widow and the two adopted daughters. The district court likewise made allowances to the son, the widow, and the two adopted daughters. In behalf of the son this appeal is prosecuted, and the plaintiff asserts the allowances other than his own are unauthorized.
The allowance to the widow is attacked on the ground of a separation from her husband before his death. The facts are that shortly before the decedent died there was a separation, and the wife filed suit for divorce and alimony and custody of children. There was a written agreement in settlement of property rights. By the terms thereof certain personal property was to go to the wife and certain real estate was to be conveyed to, her, or to be decreed to her in the divorce decree when it should be rendered, and certain money payment was to be made. The divorce action had not come on for trial before the husband's death, nor had the property settlement agreement been complied with, nor had the property been conveyed to the wife, nor the money payment made to her as agreed. It is not specifically shown that the husband and wife were not in fact living together when the husband died, nor, except for the facts above stated, was any effort made to show that the widow had waived her right to ask for a family allowance. We hold that she was still his wife, and was his surviving spouse within the meaning of section 1226, O. S. 1931, authorizing the fixing of a family allowance. See In re Hale's Estate (Cal.)4 P.2d 263; In re Ehler's Estate (Cal.) *Page 56 1 P.2d 546; Linares v. De Linares (Tex.) 53 S.W. 579.
The allowance for the two minor daughters is attacked on the ground that the adoptions and each of them were void. It is necessary here to note certain facts in reference to these adopted daughters. They were both adopted pursuant to judicial hearing, followed by decree of adoption in the county court of Osage county, said court acting under authority of sections 1701-1714, O. S. 1931. The two adopted daughters were Patricia Harlene Martin and Helen Virginia Martin.
Patricia Harlene Martin was born Rosa Lee Goans. She was adopted by the decedent and his wife at the age of eight months. At that time her father was dead, and she and her mother, Ruby Goans, had for sometime resided at the county poor farm. The child theretofore, pursuant to proper hearing, had been adjudged to a dependent and neglected child. The child's mother was present at that hearing. The county court, upon adjudging the child to be dependent and neglected, did not commit the child to any home or institution, but did place the child under the care of the county, and then the county judge entered his official consent to the adoption of the child by the decedent and his wife. The record does not disclose that the mother of the child entered any specific or written consent that the child be adopted. Consent was entered by the county judge, and both of the adopting parents and the child were present, and in fact the whole adoption was in rather strict compliance with the statute, except for the lack of written consent by the mother. However, the mother undoubtedly knew of the adoption, and of the child's residence with decedent as his adopted child, and over a period of years has never questioned it, and might well be said to have completely acquiesced in the adoption. The petition for adoption was properly docketed and filed, as were all of the papers in the case, and the decree of adoption was written, signed, and formally entered. The decree authorized the change of the minor's name from Rosa Lee Goans to Patricia Harlene Martin, and from that day forward the child has borne that name, and has been cared for as a member of the decedent's family and as his child.
In the case of In re Estate of Howard, 125 Okla. 86,256 P. 54, this court held in the syllabus, paragraph one, as follows:
"Our statute providing for the mode of adoption should be construed with a reasonable degree of liberality, where the adoption has been fully consummated, to the end that the assumed relationship, and the intention of the contracting parties, be upheld, as against strangers to the proceedings collaterally attacking same."
In that case the court further held, in substance, that where an adoption proceeding is collaterally attacked upon the ground that the mother of the adopted child did not give her written consent, it is permissible to show by extrinsic evidence that the mother acquiesced in, and by continuous acquiescence, ratified the adoption, in the Howard Case supra, the provisions of the statute were not fully complied with, in that the mother was not present and had given written consent to the adoption. In that case it was held, in substance, that this state should join those states holding that the adoption statutes should be construed and applied liberally in favor of the child adopted, and further held, in substance, that it is the duty of the court to place a fair and reasonable construction upon proceedings under the adoption statute, with a view of sustaining the assumed relationship, particularly against a collateral attack by strangers to the proceedings whose only interest is to defeat the relationship which the adopted parents recognize and never question, so that they themselves might benefit financially and directly by depriving the adopted child of any rights as a member of the family of the adopting parents, when it was clearly apparent that the adopting parents specifically and continuously intended that the adopted child should be their child, and should receive all of the benefits coming to her as a child.
In the Howard Case, supra, this court further held, in substance, that we should approve the rule stated in 1 R. C. L. paragraph 4, pages 595, 596, to the effect that adoption statutes tend to conserve the best interest of society and the state, and that, recognizing these good results, courts are more and more inclined to place a fair and reasonable construction upon proceedings under an adoption statute with a view of sustaining the assumed relationship.
In the instant case there is every indication that the adoption of this child was in entire good faith, and resulted only from an earnest and wholesome desire on the part of the adopting parents, who had no children born of their marriage, to adopt this child and give it their name and rear and care for it as their own child, and we conclude *Page 57 
that there was a substantial compliance with the adoption statutes, wholly sufficient as against the present attack of the decedent's natural son by a former marriage, and that the action of the trial court in making family allowance to this adopted minor child was correct.
The child, Helen Virginia Martin, was born Helen Virginia Cravens, and was the daughter of decedent's wife by a former marriage. The child's mother and father had been divorced long prior to the marriage of the child's mother to the decedent, and in that divorce proceeding the exclusive custody of the child was given its mother, who thereafter became decedent's wife. This adoption likewise was made by formal adoption proceedings and decree of adoption by the county court of Osage county, which decree authorized the changing of the name of the child to Helen Virginia Martin, and thereafter this child was likewise reared and treated as the decedent's own child. The mother of the child appeared and properly consented to the adoption in strict compliance with the statute. The record does not show whether the father knew of the adoption or was present, nor does the record show that the child's father ever concerned himself with the child or its whereabouts, or its status, after he was divorced from the child's mother. The divorce was granted to the child's mother upon the fault of the child's father, and while this record does not specifically disclose the grounds of the divorce, we do observe that the custody of the child was granted exclusively to the mother, and it might very well be that the misconduct of the child's father which justified the granting of a divorce to the child's mother was such misconduct or neglect as would obviate the necessity of the father consenting to, or having notice of, the adoption proceedings. From the facts in connection with the divorce, and the adoption, and the custody and care of this child, it may be said that the child's father for a long period of time acquiesced in the adoption.
All that we have heretofore said in reference to the Howard Case, supra, may be said with equal force as to the adoption of this child, and we conclude that in the adoption of Helen Virginia Martin there was a substantial compliance with the adoption statute, wholly sufficient to withstand the attack here made, and that the order of the trial court fixing an allowance for this adopted minor child was correct.
The amount awarded as family allowance to the various parties is reasonable in amount. In fact, no objection is made upon that ground.
An additional objection to the adoption of the minor children is predicated upon the grounds that "the adoption proceedings are void for the reason that Cecil Martin (the adopting father) was a restricted Osage Indian, and the adoption was not approved by the Secretary of the Interior." On this point the plaintiff cites the congressional enactment (Act Feb. 27, 1925, sec. 6, 45 Stat. 1011) denying validity to any contract for debt made by any such member of the Osage Tribe of Indians without the approval of the Secretary of the Interior. There is no question as to the efficacy of this act in cases where it is applicable, and this court has applied that act in such cases. Pasley v. Union Nat. Bank, 137 Okla. 171, 278 P. 621; Osage County Motor Co. v. Pappin, 139 Okla. 23, 281 P. 217; Dial v. Kirkpatrick, 168 Okla. 21, 31 P.2d 591.
However, we are unable to follow counsel to the conclusion that this act requires an Indian to obtain such approval before he may become the father of a child, even by adoption. While it is the policy of the government, both state and national, that, as regards certain property of Indians, all proper and legal restrictions should and must be applied and upheld, but, except in these instances, it is the policy that our Indian citizens shall, as far as possible enjoy all the rights and privileges of a citizen not of Indian blood. It cannot be denied that the relationship of parent and child, even by adoption, is a privilege and one highly cherished by men and women of character in all stations of life. We find nothing in this congressional act indicating a possible intention that it be so applied as to deny to an Osage Indian the right to adopt and rear a child, where his desire to do so is founded upon good faith and springs from his natural desire to enjoy the blessings of parenthood, and at the same time extend needed charity to a deserving infant or youngster.
Further objection to these allowances is made, in substance, upon the contention that a family allowance is in the nature of a preferred claim and may not be enforced against the restricted estate of a restricted Osage Indian, and that the state statutes in reference to homesteads and family allowances do not apply to estates of restricted Indians, because in conflict with the acts of Congress. *Page 58 
It is unnecessary to consider these contentions, in view of the fact that in this case the estate of the deceased Cecil Martin consists both of property that is restricted and of property that is not restricted, and the record shows that his unrestricted property is far more than sufficient to pay all of the family allowance made. However, in passing, we should say that even of a family allowance could not be paid out of any particular or specified property of the decedent, that would not prevent the court from fixing and allowing a family allowance in the first instance. Every family allowance must be paid out of property or funds available for its payment, and it is upon payment of the allowance that the question would arise as to whether or not any specific property or money could be used to pay it. Debts against an estate may be approved and allowed without regard to whether they can or cannot be paid from any specific fund or property of the decedent. When they are to be paid, then the question arises as to the legality of paying them out of any specific property or money.
For the reasons stated, we conclude that the family allowances were properly made to the widow, and to the son and the two adopted daughters, and the judgment of the trial court is affirmed.
RILEY, C. J., and SWINDALL, McNEILL, and BAYLESS, JJ., concur.