John WEST and Y. M. West, Plaintiffs in
Error,

v.

Sherman N. HARRIS, Administrator,
Defendant in Error.

No. 37406.

Supreme Court of Oklahoma.

May 14, 1957.

Rehearing Denied June 18, 1957.

Kenneth W. Lackey, Eufaula, for plaintiffs in error.

Robert J. Bell, Charles B. Tucker, McAlester, for defendant in error.

HALLEY, Justice.

This is an appeal by John West and Y. M. West from a judgment of the District Court of McIntosh County, refusing to set aside an order of the County Court of McIntosh County appointing Sherman N. Harris administrator of the estate of Devanner Harris, also known as Jakie Mae Harris, deceased.

The validity of the order of the County Court appointing Sherman N. Harris administrator depends upon the validity of an order of the same County Court on September 14, 1953, whereby Sherman N. Harris, then a minor nineteen years of age, became the adopted son of Devanner Harris, surviving wife of B. J. Harris, who died in 1951.

It appears that B. J. Harris and wife took into their home and reared two orphan children, Roy Harris and his sister, Floy Harris, now Davenport, whose mother had died at childbirth. These children were in no way related to Mr. and Mrs Harris. Floy Harris, now Davenport, gave birth to an illegitimate son about 1934. This son is Sherman N. Harris, administrator of the estate of Devanner Harris, above mentioned. Soon after the birth of her son, Floy Harris, now Davenport, left the home of B. J. Harris and wife and left with them her infant son. She never returned to that home to live and made occasional visits to her foster parents home, having married a man named Davenport by whom she had nine other children, and continued to live away from B. J. Harris and wife, who reared her son Sherman. Floy Harris, now Davenport, contributed nothing towards support and apparently has never made any effort whatever to secure his care or custody.

The son was baptized into the Baptist Church as the son of B. J. Harris and wife. After the death of B. J. Harris in 1951, his surviving wife appears to have talked to Floy Harris, now Davenport, about adopting Sherman, so that she could secure some form of relief. She filed a petition for adoption in September 1953. On the same day the adoption decree was entered. The petition for adoption alleged that the boy was nineteen years of age and the child of Floy Harris, now Davenport; that the whereabouts of the mother was unknown; that his mother deserted and abandoned the child at its birth and that it had resided continuously with petitioner and her husband, B. J. Harris, until the latter's death, and since his death has resided with petitioner; that they furnished the child a home, and the necessities of life at all times; that there was no person residing in Oklahoma capable of giving consent to such adoption; that the minor is over twelve years of age and has given his consent to such adoption in writing, which was attached to the petition as an exhibit.

The County Court found the facts to be as alleged in the petition and no one appeared to oppose the adoption. The court further found that the mother of the minor, Floy Harris, was not within the State and that her whereabouts was unknown but was residing some where in the State of Illinois and that her consent could not then be obtained.

The court further found that petitioner was a proper person to have the care, custody, nurture and education of the minor, having, with her deceased husband, had its care, custody and control since its birth and that the child had been abandoned and deserted by its said mother since its birth. The County Court decreed the legal name of the minor to be Sherman Nathaniel Harris and that the petitioner was more than ten years older than the child. Complete care and custody was given to Mrs. Harris, barring all others from claiming custody or possession of the minor.

Shortly after his adoption Sherman N. Harris entered the United States Military Service and made an allotment of $40 per month for his adoptive mother, which she received until her death in 1955, when Sherman N. Harris was appointed administrator of her estate. His appointment as administrator is attacked by Y. M. West, a brother, and John West, a nephew of Devanner Harris on the ground that he claimed to be an adopted son of Mrs. Harris, deceased, but that the adoption order was invalid and prayed that it be vacated and that another administrator be appointed.

The County Court denied the petition to vacate the order appointing Sherman N. Harris administrator and petitioners appealed to the District Court, which also denied the petition. Petitioners have appealed to this Court from the District Court order refusing to vacate the order appointing an administrator of the Estate of Devanner Harris. The parties occupy the same positions here as in the trial court and will be referred to by name or as petitioners and respondent.

Both parties agree that the principal question for decision by this Court is the validity of the adoption proceedings in the County Court whereby Sherman N. Harris was adopted by Devanner Harris, also known as Jakie Mae Harris. If the adoption was valid then clearly Sherman N. Harris was and is entitled to serve as administrator of the estate of his deceased mother. If he was not in fact the legally adopted son of Mrs. Harris, his eligibility to serve as administrator may be attacked since he is not a blood relative of Mrs. Harris, deceased. If the adoption decree is valid no notice of the application to be appointed administrator was necessary. If the adoption was invalid, notice of such application is necessary under Section 128, 58 O.S.1951.

Section 44, 10 O.S.1951, is as follows:

"A legitimate child cannot be adopted without the consent of its parents, if living, nor an illegitimate child without the consent of its mother, if living, except that consent is not necessary from a father or mother deprived of civil rights or adjudged guilty of adultery, or of cruelty, and for either cause divorced or adjudged to be an habitual drunkard, or who has been judiciously deprived of the custody of the child, on account of cruelty or neglect."

We shall set out portions of the testimony introduced, beginning with that of Sherman N. Harris.

"Q. From the time you were a small child you lived there in the home of Jakie Mae Harris as her own son? A. I did.

"Q. Coming down to the year 1951, was that the year B. J. Harris died? A. That is correct.

"Q. After that did you continue to live there in the home with Jakie Mae? A. I did.

"Q. Did your natural mother live with you at any time after that? A. She did not.

"Q. In the year 1953 I will ask you whether or not Floy came to visit there in the house where you and Jakie Mae were making your home? A. She did.

"Q. At that time did you hear Floy say anything about the question for you to be adopted by Jakie Mae? A. I did.

"Q. What was that? A. Well she said she wasn't able to work any more and couldn't get any relief because I wasn't adopted and would it be all right for her to have me adopted. She explained to her how she had to do that before she could get any help, and Floy said she wasn't able to take care of me herself and she said it was all right to do that.

"Q. Floy said that it was all right for you to be adopted by Jakie Mae? A. That's right.

"Q. And that was in the Summer of 1953? A. That is correct."

Floy Harris, now Davenport, the mother of Sherman N. Harris, testified in part as follows:

"Q. Of course you would have no objection to her adopting him?" A. No I wouldn't have no objection, but I didn't know nothing about it.

\* \* \* \* \* \*

"Q. As a matter of fact you weren't able to do anything for him and you thought she could? A. Yes.

"Q. Really you had nine children of your own? A. Yes.

"Q. And since he had a good home you felt that was all right? A. Yes.

\* \* \* \* \* \*

"Q. You visited there in the summer of '54 didn't you? A. Yes.

\* \* \* \* \* \*

"Q. As you say you were not able to take care of him, and you left the child with them when you went to Warner to live when he was a baby, and B. J. and Jakie Mae had the child all of their lifetime up until they died? A. Yes sir.

"Q. And he never at any time lived with you? A. No sir."

Danied Harper, Baptist Minister, who baptized Sherman N. Harris as a small boy, after testifying about the baptism, also testified:

"Q. Will you state whether or not Sherman was baptized as the son of B. J. Harris and Jakie Mae Harris?

\* \* \* \* \* \*

"A. He was, as Sherman Harris.

"Q. Do you know Floy Davenport? A. Yes.

"Q. I will ask you whether or not on or about December 17, 1955, Floy Davenport made the following statement or the following statement in substance in your presence and in the presence of Mrs. Harper, and in the presence of Roy Harris, and in the presence of Sherman Harris, in that she told Jakie Mae in the Summer of 1953, that it would be all right for her, Jakie Mae that is, to go ahead and adopt Sherman? A. Yes."

Mrs. Daniel Harper, wife of the above named Minister testified substantially the same as did Reverend Harper.

Respondent contends that the adoption should be held valid under Section 44, supra, and cites in support of his claim the case of In re Howard's Estate, 125 Okl. 86, 256 P. 54. The rule in that case is expressed in the syllabus as follows:

"Our statute providing for the mode of adoption should be construed with a reasonable degree of liberality, where the adoption has been fully consummated, to the end that the assumed relationship and the intention of the contracting parties be upheld, as against strangers to the proceedings collaterally attacking same.

"Where an adoption proceeding is collaterally attacked, upon the ground that the mother of the adopted child did not give her written consent, it is permissible to show by extrinsic evidence that she gave her oral consent at the time of the adoption, and has at all times since acquiesced in and ratified the adoption."

The facts in that case are similar to the facts in the matter before us, and in quoting from Vol. 1, R.C.L. par. 4, pp. 595, 596 the Court said:

"4. Rule of Construction of Statutes.—Inasmuch as statutes providing for a procedure or method by which one person may be adopted as the child of another are in derogation of the common law, many courts have asserted that such enactments should be construed strictly. But even in these jurisdictions a distinction has been drawn between the construction of the statute and of the act of adoption itself,

and it has been held that the act of adoption must be liberally construed in favor of the child adopted. * * * Notwithstanding the technical requirements of a statute relating to adoption, it has been ruled that an adoption which has in fact been followed up by a severance of the natural ties of the child and its residence with the adopting parents, may be shown by the oral agreement of the parents or person in loco parentis and the adopting parent."

There is also quoted Section 40 Vol. 1, R. C.L. p. 628, as follows:

"* * * If an order of adoption entered by a court having jurisdiction is questioned collaterally, extrinsic evidence is admissible for the purpose of proving any matter, the existence of which was necessary to the validity of the order, in the absence of a statutory requirement that such facts appear in the record of the proceeding. * *"

The foregoing case has been cited and followed in many later cases and we do not find that it has ever been overruled or modified as to the correct rule of construction of our adoption statutes.

The principal case cited by petitioners is that of Ex parte Vancuren, 135 Okl. 91, 274 P. 469, 470. The Howard case, supra, is cited in the body of the opinion wherein it was held that no adoption is legal where the father and mother are living but no notice is given or consent obtained from the parents. It is further stated that "the manner of giving consent is not material."

In the case before us the rights of the parent is not involved. Floy Harris, now Davenport, the mother of the minor is not a party to this proceeding. So far as the records disclose she is not complaining and has never complained of the adoption of her minor son. She admitted that she had left her infant son with her foster parents soon after his birth and does not contend that she ever contributed to his support or sought his custody at any time. She did testify that she did not give her consent to, nor have notice of the adoption proceedings but at the same time admitted that the adoption was satisfactory to her.

Floy Harris, now Davenport, testified at the hearing in the present case that the adoption was all right with her, she being his natural mother.

Under Section 50, 10 O.S.1951, it is provided in substance that if the court is satisfied that the parents of the child or survivor of them has deserted his or her family, or such child, for the space of one year next preceding the application and that the facts stated in a petition for adoption are true, and that petitioner is of sufficient ability to bring up the child, care for and educate it, the court shall make the adoption and may decree that its name be changed according to the prayer of the petition.

The foregoing section makes no provision with regard to notice or consent of the parents or parent and under the facts before us we believe that the minor here involved has been abandoned and deserted by its mother for many years. Petitioners point out that the term abandonment as used in Section 50 is defined in Kizziar v. Pierce, 204 Okl. 51, 226 P.2d 941, 945, as follows:

"In 1 Am.Jur., Abandonment, § 8, it is pointed out that the elements of abandonment are: (1) an intention to abandon; (2) an external act whereby such intention is carried into effect. The intention to abandon is the paramount inquiry."

The County Court in the order of adoption found, in part, as follows:

"The Court further finds that the petitioner herein is a suitable and proper person to have the care, custody, nurture and education of said minor child; she and her late husband, B. J. Harris, having had his care, custody and control since his birth, he having been abandoned and deserted by his said mother; the Court further finds that petitioner and said minor

child each desire that the name of said child be legally decreed to be Sherman Nathaniel Harris; the Court further finds that petitioner is more than 10 years older than said child and that she desires to adopt such child."

While the testimony of several witnesses was to the effect that they heard Floy Harris, the mother of the minor, give her verbal consent to the adoption such testimony was admitted only for impeachment purposes. We think that since this is a collateral attack upon the order of the adoption and extrinsic evidence is admissible under such circumstances, the admissions of the mother and such other evidence as is before us is sufficient to show that the mother gave her consent to the adoption of the minor. We conclude that the adoption proceedings were valid and also that the evidence is sufficient to establish desertion and abandonment of the child by its mother while it was an infant.

The mother left her son while he was an infant and there is absolutely no proof that she has ever made any claim or demand for his custody. She knew during all of the nineteen years after she was separated from her child that he was in the the home where she left him. Her conduct constituted desertion and abandonment. No other conclusion is possible under the facts before us.

It must be kept in mind that the mother is not a petitioner here. The order of adoption is being collaterally attacked by relatives of Mrs. Harris, deceased, evidently for the sole purpose of securing an interest in the estate of decedent.

We conclude that the mother of the minor child adopted gave her consent to such adoption by Mrs. Harris in whose home he had lived since infancy. The decree of the District Court is hereby affirmed.

Rehearing Denied June 18, 1957.