**Dean JONES and the State Insurance Fund, Petitioners,**

**v.**

**George C. LOVING, Administrator of the Estate of Kenneth Workman, deceased, and the State Industrial Court, Respondents.**

**No. 38761.**

Supreme Court of Oklahoma.

July 11, 1961.

Mont R. Powell, Mary Elizabeth Cox, Oklahoma City, for petitioners.

Ira (Eph) Monroe, Clinton, Mac Q. Williamson, Atty. Gen., for respondents.

WELCH, Justice.

On April 17, 1959, an award was entered by the Oklahoma State Industrial Court for the benefit of Tressie Workman Barrett, as claimant, under the Death Benefit provision of the Workmen's Compensation Act, 85 O.S.1951 § 1 et seq., said recovery being for the death of Kenneth Workman resulting from an accidental injury.

This appeal is brought by the employer, Dean Jones, and his insurance carrier, the State Insurance Fund, as petitioners to review the award.

It is first argued by the petitioner that the claimant was not an heir at law of the deceased at the time of his death, as defined by the Descent and Distribution Statutes of Oklahoma, and therefore could not be termed a dependent under Title 85 O.S. 1951 § 3.1.

The record reveals that the deceased was born on October 15, 1933; that said deceased was released by said claimant to the county court of Lincoln County, Oklahoma, on February 6, 1937, became a resident of West Oklahoma State Home for White Children and was adopted by Sam Belter and Emely Belter by decree of adoption in county court, of Custer County dated March 7, 1938.

The evidence offered reveals that on November 14, 1949, the Belters advised the County Judge of Custer County, Oklahoma, that they wished to return the child to his natural mother; they were advised by the Judge to write the mother, who then lived in California, and ask her to take her son back, which they did, and immediately received a letter from the natural mother, Tressie Workman Barrett, in which she agreed to take her boy back, provided the Belters would give up all control over him. The Belters again consulted the County Judge, who prepared a consent for adoption which was properly executed by the Belters and mailed to the claimant, Tressie Workman Barrett. The deceased being at the time the age of 16 years, was sent to his natural mother who is the claimant herein. He then assumed the name originally given him by his natural mother, which was Kenneth Carl Workman, and abandoned his adopted name of Harvey Belter. He continued to live with his natural mother and step-father until he went into the army at which time the claimant signed the waiver required as he was not of legal age. After being released from the army, and until his death in March, 1959, he made his home with the claimant.

It is obvious from the record that the boy was eligible for adoption; claimant and her husband eligible to adopt; the then adoptive parents gave their consent for adoption, and the contract of adoption was fully consummated and complied with by all parties. The record reveals that our statutes were not strictly complied with by the filing of a petition with consent for adoption, and no decree by the court or judicial officer approving the same was filed of record. However, the County Judge had knowledge of the natural mother's wishes to take her son back, and of the consent by the then adoptive parents, and by inference approved same.

This court has held that the adoption of a child is essentially a matter of contract between the parties whose consent is required and is not a judicial proceeding

although the sanction of a judicial officer is required for its consummation. In re Hughes, 88 Okl. 257, 213 P. 79. The Hughes case, supra, was cited with approval in Fisher v. Wilson, Okl., 328 P.2d 420. Also see In re Johnson's Estate, 98 Cal. 531, 33 P. 460, 21 L.R.A. 380; In re Stevens, 83 Cal. 322, 23 P. 379.

Our courts upon many occasions have recognized contracts of adoption upon much less convincing evidence than that presented here, by determining the adopted child to be an heir of the adoptive parents where the question of heirship was raised by other heirs of the adoptive parents. Clemons v. Clemons, 193 Okl. 412, 145 P.2d 928; Ceglowski v. Zachor, D.C.N.D., 102 F. Supp. 513; Snuffer v. Westbrook, 134 Kan. 793, 8 P.2d 950; Wooley v. Shell Petroleum Corporation, 39 N.M. 256, 45 P.2d 927, and Ahern v. Matthews, 337 Mo. 362, 85 S.W. 2d 377.

In Vol. 1, R.C.L. paragraph 4, pp. 595 and 596, the rule for construction of statutes is stated as follows:

"Inasmuch as statutes providing for a procedure or method by which one person may be adopted as the child of another are in derogation of the common law, many courts have asserted that such enactments should be construed strictly. But even in these jurisdictions a distinction has been drawn between the construction of the statute and of the act of adoption itself, and it has been held that the Act of adoption must be liberally construed in favor of the child adopted. And it has also been decided that while there must be substantial compliance with the provisions of the statute, yet its construction should not be so narrow and technical as to invalidate proceedings where every material provision has been complied with, * * *. It has been said that adoption statutes tend to conserve the best interests of society and the state, and that, recognizing these good results, courts are more and more inclined to abandon the old rule of strict construction and to place a fair and reasonable construction upon proceedings under a statute relating to adoption with a view of sustaining the assumed relationship, particularly against a collateral attack by strangers to the proceedings, whose only interest is to defeat the relations which the adoptive parents always recognized and never questioned. * * * The adoption should therefore be sustained, if this is reasonably possible. It is not the duty of the courts to bring the judicial microscope to bear upon the case in order that every slight defect may be enlarged and magnified so that a reason may be found for declaring invalid an act consummated years before; * * * Notwithstanding the technical requirements of a statute relating to adoption, it has been ruled that an adoption which has in fact been followed up by a severance of the natural ties of the child and its residence with the adopting parents, may be shown by the oral agreement of the parent or person in loco parentis and the adopting parent." Lynn v. Hockaday, 162 Mo. 111, 61 S.W. 885.

The above rule was followed by our court in the case of In re Howard's Estate, 125 Okl. 86, 256 P. 54, and West v. Harris, Okl., 312 P.2d 462, wherein we held:

"Our statute providing for the mode of adoption should be construed with a reasonable degree of liberality, where the adoption has been fully consummated, to the end that the assumed relationship and the intention of the contracting parties be upheld, as against strangers to the proceedings collaterally attacking same."

The principal purpose of the statute is that the application be presented to the judicial officer, consent be given, approval thereof by said judicial officer, and there is no prescribed type of petition, consent or decree required, therefore where the adoption has been fully consummated as here, we cannot see a serious necessity of

.inquiring into the manner in which the contract was made or approved as the action is not one to enforce the contract.

It must be kept in mind that the petitioner herein is a stranger to the proceedings and the question raised amounts to a collateral attack upon the contract of adoption in order to avoid liability which otherwise would be sustained.

 The evidence herein clearly reveals that the relationship intended by all the parties to the proceedings was for the adoptive parents, the Belters to be released from all rights, claims and responsibilities as to the deceased, when they executed the consent for adoption, mailed the same to the claimant, and sent the child, who was then sixteen years of age, to her. It was clearly claimant's intent to assume the responsibility as a parent when she wrote the letter agreeing to accept the child and then accepted him. The actions and advice given by the County Judge clearly indicates his sanction and approval of the contract of adoption by the parties.

Therefore every material provision was complied with by actions of the parties. We do not take the view that this court should attempt to undo or declare invalid an act consummated years ago by the actions of all parties concerned.

In drawing a distinction between the construction of the statutes and the act of adoption itself, we find no positive violation of our statutes by these parties, but merely a failure to comply with the exact requirements in making the arrangements to carry out the act of adoption itself.

The paramount purpose of our laws is to promote justice as between the members of our society, and when it becomes necessary for the courts to choose between a strict construction and a liberal construction of the statutes enacted by our Legislature, we deem it essential that the construction be given which will most nearly meet the ends of justice. In order to do that in the case before us we must follow the more liberal view and construe our adoption statutes so as to sustain the relationship intended by all the parties to the proceedings, particularly against a collateral attack by a stranger to the proceedings, whose only interest in defeating this relationship is to avoid liability to the heir.

As to the contention of the petitioner that the evidence was insufficient to show the claimant to be dependent upon the deceased, we find from the record that the evidence reasonably supports the finding of the Industrial Court as to the contribution of support by the deceased to the claimant during his lifetime, therefore, said finding will not be disturbed by this court. Oklahoma State Highway Dept. v. Nash, Okl., 297 P.2d 412.

Award sustained.