CHARLES E. WRIGHT ET AL. v. FRANK WRIGHT.

*Adoption—Contract—Specific performance—Equity jurisdiction.*

The defendant, when about two years old, was bound out by the superintendents of the poor of the proper county to one Phineas R. Wright, and, after living in his family for about seven years, was adopted under the adoption law of 1861 by Mr. and Mrs. Wright, with whom he continued to live on their farm until the death of Mr. Wright, which occurred when defendant was 22 years and 3 months old. During all of this time defendant faithfully performed his duty to his foster parents, and gave them his entire time, without compensation, in the full belief, which they encouraged him in entertaining, that he was in fact their son, and as such would ultimately come into the possession of all of their property. After the death of Mr. Wright, and after the adoption law of 1861 had been declared unconstitutional, proceedings were taken under the statute to determine who were his heirs at law, and upon the hearing in the probate court the defendant was so adjudged, which judgment was reversed on appeal to the circuit court, and a like adjudication there made in favor of the complainants, who thereupon filed a bill to restrain the defendant from the commission of waste upon said farm, to which they claimed title as the legal heirs of said Phineas R. Wright under the statute regulating the descent of real property.

LONG, J., filed an opinion, concurred in by McGRATH, C. J., holding:

*a*—That there was at least an implied contract that 'the defendant was to have the property; that there had been such a performance on his part as to take the case out of the operation of the statute of frauds; and that the title to the estate of Phineas R. Wright vested, by reason of this contract, at his decease, in the defendant, the same as if he had been the son of the deceased.

*b*—That the probate court had no jurisdiction to hear and determine in the heirship proceedings the question involved in this case, and that the circuit court was alike powerless on appeal to adjudicate upon that question.

GRANT, J., concurred with LONG, J., on the ground that the parties acted in the undoubted belief that the defendant, upon the death of Mr. Wright, would take the property, and that

no reason is seen why equity cannot give validity to such intention.

HOOKER, J., filed a dissenting opinion, concurred in by MONTGOMERY, J., holding:

*a*—That the question whether or not Phineas R. Wright could, in the absence of statutory authority, make the defendant his heir, and procure recognition for him as such, is concluded for this case by the adjudication of the circuit court in the heirship proceeding.

*b*—That no case is found which holds that proceedings like those shown in this case can be construed into a contract to convey property by will or otherwise, where the evidence conclusively shows that the undertaking was merely to adopt and make an heir of a child, subject to the right on the part of the foster parent to cut him off as he might his own child, especially where the child was not only ignorant of the transaction, but was already under legal obligation to perform all of the services which constitute the consideration for such agreement.

Appeal from Jackson. (Peck, J.) Submitted on briefs December 15, 1893. Decided February 27, 1894.

Bill to restrain waste. Defendant appeals. Decree reversed, and one entered dismissing the bill, and decreeing the legal title to the land to be in defendant. The facts are stated in the opinion.

*Parkinson & Campbell* (*Louis J. Pierson,* of counsel), for complainants.

*Thomas E. Barkworth,* for defendant.

LONG, J. This bill is filed by Charles E. Wright, of Denver, Colo., Edward Wright, of Jackson, Mich., Nettie Hart, of Oakley, Mich., and Elizabeth Pierson, of Chicago, Ill.,—all of whom claim to be the heirs at law of Phineas R. Wright, deceased,—to restrain defendant from committing waste on land of which Phineas R. Wright died seised, and which complainants now claim to own. The three complainants first named claim an undivided one-half interest in said land as children of Chester Wright,

who was the brother of the deceased; and the complainant Elizabeth Pierson claims, as a sister of the deceased, to be entitled to an undivided one-half interest.

On the hearing in the court below it was conceded by complainants and defendant that Phineas R. Wright was the owner of this land, consisting of 240 acres, situate in the township of Blackman, Jackson county, this State, and that he died seised thereof on May 23, 1888, leaving Polly M. Wright (now ,Polly M. Richardson, by a second marriage) as his widow, but no children surviving him; that after his death, and prior to the filing of this bill, what would amount to legal waste was committed by the defendant, by cutting timber upon the premises, as averred in the bill, to an amount which would confer jurisdiction upon the court to hear and determine,—the complainants agreeing, upon this conceded state of facts, to waive all claim for damages arising out of such waste already committed.

The defendant set up in his answer his claim of title to the premises; and upon the hearing in the court below it was shown, in his behalf, that he entered the family of deceased when about two years old, under an agreement entered into between the superintendents of the poor for the county of Jackson and the deceased, said agreement being in the form of an indenture binding the defendant to the deceased until he should become 21 years old; that this indenture was dated January 29, 1868; that defendant's name was then Frank Creer, but subsequently deceased and his wife, acting under the statute then in force,[1] filed their petition in the probate court declaring their intention to make him their heir at law, and praying that his name be changed to Franklin P. Wright; that on January 30, 1875, the order was accordingly made, defendant being then about nine years old; that defendant remained in the

---

[1] How. Stat. chap. 242.

family, and at the time of the death of Phineas R. Wright was 22 years and 3 months old; and that he had performed his duty to his foster parents faithfully, and given them his entire time, never receiving any compensation for such services.

It was testified by Mrs. Richardson on the hearing in the court below that it was understood between her husband (the deceased) and herself that the defendant should, as the result of the adoption, be their heir, and ultimately come into possession of their property, and that it was always so intended. She was asked: '

"Did that intention continue, to your knowledge, during Mr. Wright's lifetime?

"*A.* It did.

" *Q.* Do you know whether or not Mr. Wright expressed from time to time a belief that that was successfully accomplished by the adoption papers?

"*A.* He told me a number of times that he had seen the lawyers about it, and they all said it was just as safe.

" *Q.* State whether or not the defendant, to your knowledge, understood that he was to be the heir at law?

"*A.* He expected— He did not know but what he was our child until after Mr. Wright's death."

The witness further testified that there was never any talk between herself and her husband about paying the defendant in any way, and that about three months before Mr. Wright's death he was at a neighbor's house, and was speaking about these heirs coming up to break down this adoption, when he said: "Rather than have it done, he would do most anything, for he intended his property should go to Frank, if he used it up in four weeks after he died." The witness further testified that Mr. Wright meant and expected that Frank would inherit the property, the same as a son, and that he died in that belief.

After Phineas R. Wright's death, proceedings were taken under the statute, in the probate court for Jackson county, to determine who were the heirs at law. Upon the hear-

ing in that court, the defendant was so adjudged. An appeal was taken to the circuit court, and on the 1st of February, 1890, the proceedings of the probate court were reversed, and the complainants in the present case adjudged to be the heirs at law.

Defendant claims that in effect, and by force of the arrangement actually made, there was an agreement upon the part of Phineas R. Wright to reward him, for his services and love and affection as a son, with such property as he might be seised of at his death; that defendant, acting under that belief, performed the duties which made up the consideration of the contract, and is therefore entitled to receive his reward; and that equity will enforce this understanding, despite the failure of the law. On the other hand, it is contended by complainants that the case is barren of any proof of a contract to will or devise the property to defendant, only as defendant might have inherited it, had there been a law under which he might have been adopted, and had legal proceedings been had under such law to accomplish such purpose; that there is no such thing as adoption known to the common law; that the proofs fail to show an agreement, except the agreement to adopt, which has failed because of the unconstitutionality of the statute; and that the defendant's claim is set up, apparently, to have the court find an agreement to let him have the estate, and then enforce it. It is also contended by counsel for complainants that the order of the circuit court made upon the appeal from the probate court is an adjudication upon the question here in controversy, and is *res judicata* as to all matters here involved.

The statute under which defendant was adopted was held unconstitutional in *People v. Congdon,* 77 Mich. 351. It is apparent, however, that Phineas R Wright and his wife supposed that defendant's adoption had been success-

fully accomplished by the proceedings taken for that purpose. During all these years they treated · defendant as their son and heir, and Mr. Wright died in the belief that he would inherit the property the same as an own son ' would have done. So careful had the parties been to show him their love and affection, that he never knew until after Mr. Wright's death but that they were his own parents. During all these years he had rendered them filial affection, and given them his labor upon the farm, with the belief that at their decease he would inherit all they possessed. We think there may be said to be a contract, impliedly at least, that defendant was to have this property, and that there had been such a performance on the part of the defendant as to take the case out of the operation of the statute of frauds. If this arrangement so solemnly made by Mr. and Mrs. Wright cannot be carried out,—if strangers may now step in and take this inheritance which the defendant · has been led to believe would be his,—the defendant would be most outrageously wronged. He has lived since his adoption upon this farm, in the full belief that he was under his own father's roof, and in the full expectation and belief that, as a son and only child, he would inherit it. It would be technical indeed to say, from all these circumstances, that no contract could be implied which a court of equity would enforce to save the rights of the defendant.

There are two cases arising in the New Jersey equity court which sustain this doctrine,— *Van Dyne v. Vreeland* (decided in 1857), 11 N. J. Eq. 370, and *Van Tine v. Van Tine* (decided in 1888), reported in 15 Atl. Rep. 249, in which *Van Dyne v. Vreeland, supra,* is cited and approved. In the first of these cases, an uncle had made an agreement with the father of an infant child that he would adopt the boy, and after the death of himself and wife all the property should go to him. There was no formal

adoption, but the child lived in the family 25 years, assumed their name, and treated them as parents. The court held that there was a performance on the part of the child, and the agreement could be enforced. In the latter case, a girl a few months old was adopted by Mrs. Stryker, who assumed the obligation, by parol, with her father, to treat the girl as her own child, and make her her heir. The girl remained in the family, giving her time and affection to Mrs. Stryker, with the expectation of becoming Mrs. Stryker's heir. The court found that there . was a contract with the child, that the contract was performed on her part, and therefore she was entitled to receive the property, which was real estate, as in the present case. The doctrine of these cases finds support in *Rhodes v. Rhodes*, 3 Sandf. Ch. 279, and *Sutton v. Hayden*, 62 Mo. 101.

In *Shahan v. Swan*, 48 Ohio St. 25, the supreme court of Ohio expressly recognizes the doctrine of these cases. It is there said:

" Notwithstanding that it is the established rule in Ohio that the payment of the consideration, even in the personal services of the party seeking relief, does not ordinarily constitute such part performance as will take a case out of the operation of the statute of frauds, we do not wish to be understood to hold that cases may not arise wherein specific performance of a contract in parol may be had on the ground that the consideration had been paid in personal services not intended to be, and not susceptible of being, measured by a pecuniary standard."

This doctrine is also recognized in *Sharkey v. McDermott*, 91 Mo. 647.

We are aware that the principle laid down here is not supported in *Wallace v. Rappleye*, 103 Ill. 229, and *Wallace v. Long*, 105 Ind. 522, and some other Illinois and Indiana cases, as well as in *Shearer v. Weaver*, 56 Iowa, 578; but we think the better reasons support the conclusions reached by the New Jersey court.

It is contended, however, that in the cases referred to a contract was shown to have been entered into between the party adopting the child and the parent, or some one who had the right and authority to make the contract. We think it has already been sufficiently demonstrated that such a contract is to be found in the arrangement made for defendant's adoption, and the acts of the parties subsequent thereto, and that it has been fully performed on the part of the defendant; so that it is taken out of the operation of the statute. It was expressly held in *Carmichael v. Carmichael*, 72 Mich. 76, that a person may enter into a valid agreement by parol, binding himself to make a particular testamentary disposition of his property. In that case, *Van Dyne v. Vreeland* was cited with approval.

One other question arises. Are the proceedings had in the circuit court *res judicata?* These proceedings were taken under the provisions of Act No. 278, Laws of 1887, which gives to any person claiming an interest in the lands to which deceased had title at the time of his death the right to apply to the probate court, and gives that court power to adjudicate and determine who are the legal heirs or legal representatives, and entitled to such lands. Section 3 of the act provides that such "adjudication shall be entered on the journal of said court, and which entry, or a duly certified copy thereof, shall be *prima facie* evidence of the facts therein found." The inquiry to be instituted under that statute would give the probate court no jurisdiction to determine the questions involved in the controversy here. That proceeding was to determine who were the legal heirs or legal representatives entitled to take. Here the claim set up by the defendant by way of cross-bill is for the enforcement of a contract, which he insists that equitably he is entitled to

have enforced against the legal heirs.    The probate court had no jurisdiction to hear and determine that question, and, on appeal from the probate court, the circuit court would have no such jurisdiction.    *Nester v. Ross Estate,* 98 Mich. 200; *Linneman v. Moross Estate,* Id. 178.

It follows that the decree of the court below must be reversed, and a decree entered. here dismissing complainants' bill, and finding that the title to the estate of Phineas R. Wright vested, by reason of this contract, at his decease, in the defendant, the same as if he had been the son.

By reason of the stipulation between the parties, no costs will be allowed to either party.

McGRATH, C. J., concurred with LONG, J.

GRANT, J. *(concurring.)*  Each case of this character stands upon its own peculiar circumstances and facts, upon which relief is granted or denied.    The present case forms no exception.    Mr. and Mrs. Wright were childless. They desired to adopt some one as heir, who should inherit their property.    They first took the defendant under articles of apprenticeship.    The adoption superseded these articles, and from that time until the date of his majority the relations existing between them were understood by all to be those of parent and child, and not of apprentice and employer.    In no more solemn manner could Mr. Wright and his wife have declared that upon their death defendant should receive their property.    It is no reply to this to say that, in his lifetime, Mr. Wright might have made other disposition of his property.    He did not do so, and died in the belief that defendant would have it, and that he was his legal heir.    They gave defendant their own name, and by their conduct, language, and treatment represented to him that he was their own son. He lived with them upon this understanding until some

time past the age of majority. He had a right to rest and act upon the belief that he was the legal heir. So long as his reputed father and mother chose to let him repose in this belief, others had no right to interfere. Equity is clearly with the defendant, and, if relief cannot be granted, it must be because the strict rule of law interferes, and permits the accomplishment of an act of the greatest injustice. Unfortunately, the law in regard to adoption was found to be unconstitutional because the real object of the act was not expressed in its title. Each party acted in the undoubted belief that the defendant, upon the death of Mr. Wright, would take the property. Can equity give validity to such intention, in the absence of an express contract? I see no reason why it may not. Defendant rendered services upon the faith of his relationship. Those services were accepted in reliance upon such relationship, declared in the most solemn manner. There are no children interested. If there were no collateral heirs, the property would otherwise escheat to the State. While it is true, in the cases cited from New Jersey, that the parties who took the complainants to live with them said that if they would remain they should have their property, still great stress is laid upon facts and circumstances similar to, but not as strong as, some in the present case. As I read those authorities, they are not based solely upon the existence of a promise. This is a case where, in my judgment, equity should declare that to be done which the parties clearly intended. I therefore concur in the opinion of my Brother LONG.

HOOKER, J. *(dissenting.)* I am unable to concur in the opinion of my Brother LONG. The defendant admits the acts which constitute waste, unless he can establish his right to the premises under his answer, which partakes of the nature of a cross-bill. The undisputed testimony shows that he was bound to the intestate in 1868, when an infant

of less than two years of age. This imposed upon him the obligation of rendering service to his master until he should reach the age of 21 years. In 1875—he having lived with the intestate during the interval—proceedings were had for his adoption under the statute, and with the intention of making him the heir of his foster parents. These proceedings are regular, but unfortunately the act was declared unconstitutional some years later, and hence the defendant did not become the heir of the intestate by force of the statute. If he can be held to have been his heir at law, it must be by reason of our ability to find that the intestate made a valid contract to make him such.

Whether a man can, in the absence of statutory authority, make another his heir, and procure recognition for him as such, is a question not discussed. If he could, that question is concluded for this case by the adjudication by the circuit court, which, in the proceeding appealed from probate court, in which all of the parties were heard, determined that he was not such heir, and that the complainants were the lawful heirs of the intestate. Accordingly, we find that the defendant is not claiming upon the theory that he is the heir, but upon the theory that he is not the heir, and that he has the right to the specific performance of a contract whereby the intestate undertook and promised to give him his property at death in consideration of service until the defendant should reach his majority, which service he says has been rendered. Unfortunately for him, however, the testimony conclusively shows that the intestate never made any such promise. The indentures of apprenticeship are not pretended to have been based on any such promise. The adoption proceedings contain no more than the consent to make him an heir, the same as the intestate's own children; and if we shall, viewing these proceedings in the light of the unconstitutional law under which they were had, think that the

intestate may be held to have promised to make him such heir, there is yet a fatal variance between the contract relied upon and the one proved. Were this an express and unqualified agreement to make him such heir, and were it based on the promise of service to which the intestate was not already entitled, it could not be enforced as a contract whereby the intestate had promised to give to the defendant his property in consideration of his rendering certain service. The defendant cannot recover upon the theory which he is relying upon. He is precluded by the former adjudication from recovering as the heir, if that could otherwise be permitted, which we do not intimate.

The evidence, so far as it appears in the record, shows an intention on the part of the intestate to allow his property to go to the defendant. Whether the complainants could have produced evidence to the contrary, we have no means of knowing, as they appear to have relied upon their legal rights. Perhaps, however, it is fair to infer that they could not, and, if so, it is a hardship upon the defendant to be deprived of the property. But he was under the obligation to render the service to the intestate before the adoption, and he incurred no further obligation by reason of the adoption. It is therefore difficult to see how the case differs from any other *nudum pactum.* The disappointment is one that comes from finding that he has labored under a mistake in relation to his ancestry and ancestral rights. I find no case which holds that proceedings like those shown in this case can be construed into a contract to convey property by will or otherwise, where the evidence conclusively shows that the undertaking was merely to adopt and make an heir of a child, subject to the right upon the part of the foster parent to cut him off as he might his own child, especially where the child adopted was not only ignorant of the transaction, but already under a legal obligation to perform all

of the services which constitute the consideration for such agreement.

I think the decree of the circuit court was correct, and should be affirmed, with costs.

MONTGOMERY, J., concurred with HOOKER, J.