PERRY v. BOYCE.

1. ADOPTION—ESTATES OF DECEDENTS—EVIDENCE.
    In suit against public administrator to establish plaintiff's claim
    of title to property of deceased person, record *held*, without
    proof of a formal adoption of plaintiff by deceased.

2. PARTNERSHIP—ESTATES OF DECEDENTS—EVIDENCE.
    In suit against public administrator to establish plaintiff's
    claim of title to property of deceased person, record *held*, not
    to justify finding that plaintiff and deceased were partners
    within meaning of uniform partnership act (2 Comp. Laws
    1929, § 9847).

3. WILLS—FORM.
    Where an instrument lacks the formal requisites of a will, the
    beneficiary named therein may not take as an heir, devisee or
    legatee.

4. VENDOR AND PURCHASER—LAND CONTRACTS.
    An instrument by which decedent had declared plaintiff had
    a half interest in all decedent owned, had done all the work
    to make a living for the past six years and left everything
    to plaintiff in case of death did not constitute a contract to
    convey property.

5. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED
    —AGREEMENT TO ADOPT.
    In suit against public administrator to establish title to
    property by reason of deceased's alleged agreement to adopt
    plaintiff, latter was incompetent to testify as to such agree-
    ment under statute relating to matters equally within knowl-
    edge of deceased (3 Comp. Laws 1929, § 14219).

6. ADOPTION—AGREEMENT TO ADOPT.
    Each case involving an alleged agreement to adopt stands upon
    its own peculiar circumstances and facts, upon which relief
    is granted or denied.

7. SAME—AGREEMENT TO ADOPT—EVIDENCE.
    In suit against public administrator to establish plaintiff's

REFERENCES FOR POINTS IN HEADNOTES

[3, 4] Provision for post-mortem payment or performance as affect-
    ing instrument's character and validity as a contract. 1 A.L.R.
    (2d) 1178.
[4] Remedies for breach of decedent's agreement to devise, bequeath,
    or leave property as compensation for services. 69 A.L.R. 14.
[4] Decedent's agreement to devise, bequeath, or leave property as
    compensation for services. 106 A.L.R. 742.
[8] 1 Am. Jur., Adoption of Children, § 20.

claim of title to property of deceased person, evidence *held*, sufficient to establish an agreement to adopt plaintiff.

8. SAME—AGREEMENT TO ADOPT—DEATH OF ADOPTING PARTY WITHOUT HEIRS.

Where facts and circumstances warrant an inference of an agreement to adopt, in the absence of any heir at law, the adoptee would be equitably entitled to all the real and personal property of which the adopting party died possessed.

Appeal from Allegan; Miles (Fred T.), J. Submitted October 6, 1948. (Docket No. 28, Calendar No. 44,176.) Decided November 12, 1948.

Bill by Millard Perry against Lelia Boyce, public administrator of Allegan county, administrator of the estate of Howard MacGregor, deceased, to establish his claim to property left by decedent. Decree establishing plaintiff's right to one half the property. Defendant appeals. Plaintiff cross-appeals. Decree modified to award all property to plaintiff.

*Harry Pell*, for plaintiff.

*Allaben, Wiarda, Hayes & Hewitt*, for defendant.

BUSHNELL, C.J. This is an appeal by defendant Lelia Boyce, public administrator of the county of Allegan, as administrator of the estate of Howard MacGregor, deceased, and a cross appeal by plaintiff, Millard Perry, from a decree establishing title in Perry to one-half of the personal and real property of the deceased.

MacGregor had lived for some years at Wayland in Allegan county, where he repaired and cleaned septic tanks and performed other odd jobs for various people. Perry, who was about 30 years old at the time of MacGregor's death, had met him in the South when he was about 14 years old. Perry, who had run away from home, apparently with the consent of his father, returned to Michigan with MacGregor. From then until his first marriage in

1940, Perry lived with MacGregor and assisted him in his work.  During the depression years, Mac-Gregor made flower stands and paper flowers which Perry sold on the street corners and from house to house in order to provide MacGregor and himself with the necessaries of life.

MacGregor had no relatives or close associates and apparently desired someone who would take an interest in him and form a relationship analogous to that of father and son.  This intimate relationship thus established continued without interruption until MacGregor's death.  MacGregor referred to Perry as "my boy" and "my son," and Perry called him "pap" and "daddy."  On June 10, 1937, MacGregor signed a statement reading:

"Dear Sirs:

Millard Perry has a half interest in all I have or owne he has done all the work to make a living for the pas six years.  So if I should pass away I leave everything to him.

HOWARD MACGREGOR
June 10th, 1937"

On August 24, 1945, MacGregor re-signed this paper.

On July 11, 1946, MacGregor, who was known as both Norman and Howard, signed two other papers reading as follows:

"I Norman MacGregor leave the house at Park Lake to Millard Perry and also the furniture.

NORMAN MACGREGOR
Witness this day of July 11-1946

PAUL. BUSH"

"I Howard MacGregor Will and leave the house in Wayland and the Truck and all my business to Carl Joe Tigchelaar.

HOWARD MACGREGOR
Witness this day the 11th of July 1946

PAUL BUSH"

In 1940, while work was scarce, Perry, who was interested in making carnival equipment, after discussing the situation with MacGregor, spent that summer in the carnival business, where he met the girl he married. He returned home at the close of the season, where he worked with MacGregor.

Perry, on June 29, 1937, purchased property in Wayland on a land contract on which he made payments from time to time. In 1940 the land contract vendor gave a warranty deed to MacGregor covering this property. The record does not contain any testimony as to the disposition of Perry's interest therein as land-contract purchaser.

The attorney who handled Perry's divorce testified that he and his wife separated in 1940, and he subsequently joined the merchant marine, having been rejected for military service because of poor hearing. While in that service Perry and Mac-Gregor carried on an uninterrupted correspondence, and Perry sent money to MacGregor from time to time. After leaving the merchant marine, Perry remarried in 1944, and his son, called Allen Norman, was named for his wife's father and MacGregor. Perry and his wife visited MacGregor from time to time, and when MacGregor died, Perry arranged for his burial in Mrs. Perry's family lot.

The record, although replete with testimony indicating an intention and a desire on the part of Mac-Gregor to adopt Perry, is barren of any proof of a formal adoption. Mrs. Lelah Russell and her husband, Ray Russell, testified that as early as 1934 MacGregor introduced Perry as his boy and that he was accepted as such in the community, and that they did not know that he was not an adopted son until they read the MacGregor obituary notice.

The trial judge said in part:

"A careful consideration of all the testimony convinced the court that plaintiff is not entitled to be treated as if he had been adopted. The court cannot say that 'treating that as done which ought to have been done' he is an adopted son. On this phase of the case the court must reject plaintiff's claim.

"It fairly appears, however, that there was a close understanding and a strong parental feeling of deceased for plaintiff. The testimony fairly shows that these two men worked together much as father and son and that both considered that the business that they had built up was *their* business and not the business or property of either of them. To all intents and purposes these men were partners, and plaintiff being the younger man, probably did most of the work and was no doubt responsible largely for the accumulation of property."

He based his decision upon the existence of a partnership, and held that property, "whether in the name of MacGregor or Perry, belonged to them in equal shares."

A search of the record does not disclose any testimony justifying the conclusion that Perry and MacGregor were partners. In response to questions on this subject during argument on appeal, Perry's counsel admitted that there was no real proof of the existence of a partnership. The relationship between the parties does not stand the test for determining whether a partnership exists as laid down in the uniform partnership act. (Act No. 72, Pub. Acts 1917, as amended), and particularly 2 Comp. Laws 1929, § 9847 (Stat. Ann. § 20.7).

The paper signed and re-signed by MacGregor lacks the formal requisites to permit it to take effect as a will; hence we must hold that Perry was not entitled to take as an heir, devisee or legatee; nor can it be held to be a contract to convey property.

Perry contends, however, that all the facts and circumstances show that there was an agreement to adopt, which agreement was sufficiently consummated to entitle him to receive the entire estate of the deceased. With the lips of MacGregor sealed by death and the lips of Perry sealed by the statute (3 Comp. Laws 1929, § 14219 [Stat. Ann. § 27.914]) there is an absence of direct proof of an agreement to adopt. There are, however, sufficient facts and circumstances to justify this conclusion. As stated by Mr. Justice GRANT in his concurring opinion in *Wright* v. *Wright*, 99 Mich. 170, 178 (23 L. R. A. 196):

"Each case of this character stands upon its own peculiar circumstances and facts, upon which relief is granted or denied. The present case forms no exception."

The facts in the instant case are sufficiently analogous to those in *Roberts* v. *Sutton*, 317 Mich. 458, to make the decision there controlling in the instant case. Because of its recent publication we do not repeat what we said in the *Roberts Case*. Defendant seeks to distinguish this case and points out that the plaintiff lived in the decedent's home for 20 years, assumed his name, worked in his office without compensation, and that there was an attempt to adopt. Furthermore, that part of the property held by decedent in the *Roberts Case* at the time of his death was acquired from the plaintiff's mother by right of survivorship. These are but factors pointing towards an agreement to adopt. In the instant case there is considerable evidence pointing in the same direction though different in its factual aspect, but sufficient, however, in our judgment, to clearly establish such an agreement. The authorities cited in the *Roberts Case* are applicable here.

Since the facts and circumstances warrant an inference of an agreement to adopt, Perry, in absence of any heir at law, is equitably entitled to all the real and personal property of which MacGregor died possessed, the same as if he had been his actual son.

A modified decree will be entered here awarding to plaintiff the entire estate of the deceased, after the payment of claims and expenses of administration. Costs to plaintiff.

SHARPE, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.