Leroy STEWARD for Terrence Steward,
Plaintiff,

v.

Elliot L. RICHARDSON, Secretary of
Health, Education and Welfare,
Defendant.

Civ. A. No. 34711.

United States District Court,
E. D. Michigan, S. D.

Oct. 24, 1972.

Morton E. Schneider, David J. Capriccioso, Detroit, Mich., for plaintiff.

Ralph B. Guy, Jr., U. S. Atty., Robert A. Rosenberg, Asst. U. S. Atty., Detroit, Mich., for defendant.

OPINION AND ORDER

GUBOW, District Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The final decision of the Secretary in this case is a decision of the Appeals Council, rendered March 18, 1970, upholding the determination made by the Hearing Examiner on December 23, 1969.

The Hearing Examiner determined that Plaintiff Leroy Steward's legally adopted son, Terrence Steward, is not entitled to child's insurance benefits under Section 202(d) of the Social Security Act, 42 U.S.C. § 402(d). The matter is before this Court on cross-motions for summary judgment.

The facts in the case are not in dispute. As set forth by the Hearing Examiner (Tr. pp. 7-9), they are as follows:

"Mr. Leroy Steward testified that he is 69 years of age; that he had an 8th grade education and enjoys reading; that he has lived at his current address since October 1963. His first wife died in 1962. He remarried in 1963. His spouse is living with him. They have no children. She is a high school graduate. He has a daughter whom he adopted when she was a baby and who lived with him and his first wife. On April 3, 1959 she gave birth to Terrence. She brought him home from the hospital and continued to live with the wage earner for about a year after her son's birth. At that time she married and moved, leaving Terrence with the wage earner. She has three children by this marriage. She did not provide for Terrence while she still lived with the wage earner, nor has she provided for him since that time.

"In December 1964 Mr. Steward applied for retirement insurance benefits under the Social Security Act. He was an employee of the Detroit sanitation department at the time. He retired on March 1, 1965. While applying for these benefits he told employees of the District Office of the Social Security Administration about Terrence and said that he would like to obtain benefits for him. He was told that he could obtain such benefits if he adopted the boy. He did nothing about this until in 1966 when he visited the Wayne County Juvenile Court and stated that he wanted to adopt Terrence. The matter was discussed with Terrence's mother and she consented to the adoption. She later signed papers at the Social Security District Office confirming her consent. The necessary petition for adoption was filed.

Some time later Mr. Steward revisited the adoption section of the Juvenile Court and was told that the adoption proceedings would take some time. He felt, however, that since he was Terrence's grandfather the adoption would be approved. He therefore did not follow up on his petition and just waited. Finally, on July 17, 1967, the Order of Adoption was entered. He received a copy of the order a few days later.

"On examination by counsel Mr. Steward said that he has been Terrence's sole support since his birth. He has fed and clothed him and paid all his expenses. He is attending school and the school authorities consider the wage earner his parent. Mr. Steward signs all his report cards. He treats him as his son and has always wanted to inherit from him as a natural son would. For many years he has shown him to be his son on income tax returns.

"At the time of filing his application for retirement insurance benefits he was not told by anyone at the Social Security office that adoption of Terrence would have to be effected within 24 months after the month in which he became entitled to retirement benefits. He did not learn of this condition until he had received the adoption order, entered July 17, 1967,—30 months after the wage earner became entitled to retirement insurance benefits on January 1, 1965. Had he known of this requirement he would have adopted Terrence much sooner than he did. He had thought about adopting the lad prior to the death of his first wife but she had been ailing about 2 years before her death and therefore he was unable to get out to see about the adoption. On remarrying in 1963 he discussed the matter of adopting Terrence with his second wife and they decided to proceed with adoption.

"Terrence's mother, Mr. Steward said, had always told him that Terrence was his. Terrence did not want to be with her anyway. He preferred living with the wage earner.

"The documentary record contains a Statement by the wage earner's daughter, (Exhibit 13, dated December 11, 1968),

that she is Terrence's natural mother; that formal consent to give up the child (for adoption )was given in April 1966; that she signed all the necessary papers in Juvenile Court; that she gave up Terrence completely as soon as he was born; that she would have given her (formal) consent in January 1966 but was sick and in the hospital; that he (sic) father from the beginning promised to care for Terrence until he was grown.

"In his Statement dated December 11, 1968, (Exhibit 13), Mr. Steward stated that his first wife died November 29, 1962; that he continued to care for the child and remarried in October 1963. He and his present wife decided that to protect the rights of the child they should adopt him. It was actually after he retired that he had sufficient time to proceed with the adoption. He had adopted the child in his own mind from his birth.

"In an earlier Statement dated February 29, 1968 (Exhibit 8), Mr. Steward stated that when his first wife died he remarried about October 1963 and that his second wife thought they should adopt Terrence; that adoption proceedings were started in about June 1966; that no action to adopt had been taken prior to this; that no provisions were made for Terrence prior to this—only in insurance policies. (Included is also the statement: 'There was no adoption contract.' Counsel objected to this as representing a conclusion of a District Office interviewer. The Examiner sustained the objection.) The Statement also states that after the wage earner's daughter left home to marry in 1961, Terrence remained with him; that she made no attempt to reclaim him but never gave him up completely until about February of 1967; that he does not remember who the father of the child is, but that Terrence's mother always thought that he should have the child."

■ Section 202(d)(1)(C)(i) of the Social Security Act, 42 U.S.C. § 402(d)(1)(C)(i) provides that the child (as defined in Section 216(e) of the Act, 42 U.S.C. § 416(e)) of a living individual entitled to old age insurance benefits is entitled to child's insurance benefits provided the child is dependent upon such individual at the time the child's application was filed. Section 202(d)(9)(B) of the Act, 42 U.S.C. § 402(d)(9)(B) provides that this dependency requirement is met in the case of an adopted child if the child was legally adopted "before the end of the 24-month period beginning with the month after the month in which such individual became entitled to old-age insurance benefits".

Mr. Steward became entitled to his benefits on January 1, 1965. Although he filed a petition for adoption within the 24-month period following this date, the order for adoption was not entered until July 17, 1967—30 months after he became entitled to his benefits. For this reason, the Hearing Examiner found that Plaintiff was not entitled to benefits under Section 202(d) on the basis of legal adoption.

■ In Michigan, a person cannot become legally adopted except upon an order of adoption entered by the Probate Court. M.C.L.A. § 710.1 et seq. It is clearly established that, in order to have a legal adoption, the statute must be observed. In re Garlow's Estate, 313 Mich. 402, 21 N.W.2d 178. Accordingly, it appears that the 24-month requirement of Section 202(d)(9)(B) of the Act must make reference to the date of the order of adoption rather than the petition for adoption, and the requirements of the Section are therefore not met in this case. Rodgers v. Gardner, (U.S.D.C. W.D.Ky., Civil No. 5625 9/11/67).

Plaintiff contends, however, that the 24-month requirement was not meant to apply in the circumstances of this case. It is Plaintiff's argument that it was intended only to prevent a person from fraudulently obtaining benefits and not to bar benefits where, as here, an individual has supported a child for his complete life and always treated him as a son. No authority is cited for this proposition, and the exception urged by the Plaintiff is clearly not a part of the statute. The Hearing Examiner prop-

erly considered himself limited to the provisions of the Act and was correct in denying benefits on the grounds of legal adoption.

Plaintiff also argues that Section 216 (h)(2) of the Act, 42 U.S.C. § 416(h)(2) operates in this case to make Terrence the "child" of Leroy Steward for purposes of child's insurance benefits under Section 202(d) of the Act. Section 216 (h)(2) provides, in pertinent part:

> "In determining whether an applicant is the child . . . the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application . . . Applicants who according to such law would have the same status relative to taking intestate personal property as a child . . . shall be deemed such."

It is Plaintiff's position that under the doctrine of "equitable adoption" as recognized in Michigan (where Leroy Steward and Terrence Steward are domiciled), Terrence "would have the same status relative to taking (Leroy Steward's) intestate personal property as a child".

The doctrine of equitable adoption is recognized by Michigan courts. Wright v. Wright, 99 Mich. 170, 58 N.W. 54 (1894); Roberts v. Sutton, 317 Mich. 458, 27 N.W.2d 54 (1947); Perry v. Boyce, 323 Mich. 95, 34 N.W.2d 570 (1948). Under this doctrine, the right of a person, not a child of the decedent, to share in the intestate's estate as if he were a child, is created if, from the facts surrounding the relationship between the person and the intestate, an implied contract exists by which the person is given the right to such a share. Such an implied contract to adopt has been found to exist in three Michigan cases, heavily relied upon here by Plaintiff. Wright v. Wright, supra; Roberts v. Sutton, supra; and Perry v. Boyce, supra. These cases reveal that the Michigan court has been quite liberal in

inferring a contract to adopt from a close relationship found to exist between the "child" and the deceased, including the fact of lifelong support of the "child" by the deceased. They also reveal, however, that the requirements of a contract must be present, including the existence of consideration flowing to the deceased in his lifetime, generally in the form of service performed by the child. In Wright v. Wright, supra, the child entered into the decedent's family when he was two years old under an indenture agreement between the deceased and the County Superintendent of the poor. The child was supported entirely by the deceased, and treated as a son. He was 22 years old when the deceased died and had not only rendered "filial affection" to the deceased but had labored on the deceased's farm "with the belief that . . . he would inherit". These factors gave rise to a contract which was treated by the *Wright* court as a contract that the child would inherit rather than a contract to adopt. 99 Mich. at 175, 58 N.W. at 55. In Roberts v. Sutton, supra, the child entered the home of the deceased, a doctor, at age 5 and stayed until she was 26 years old. During this time, she was supported by the decedent and she, in turn, "assisted him in his dental practice on a full-time basis for several years both before and after her majority, without compensation . . . .". 317 Mich. at 460, 27 N.W.2d at 54. It was on the basis of this reciprocal relationship that the court found an implied contract to adopt existed and held that the "child" was entitled to the decedent's estate.

Similarly, in Perry v. Boyce, supra, the "child", who began living with the decedent when he was 14, lived with the deceased and was supported by him. The child sold paper flowers, made by the decedent, on street corners and from house to house during the Depression "in order to provide [decedent] and himself with the necessaries of life". 323 Mich. at 97, 34 N.W.2d at 571. On the basis of the services performed by the child for the deceased, the court found

that an equitable agreement to adopt existed and that the child was entitled to the decedent's property.

 The instant case clearly presents a different situation. While Leroy Steward, commendably, and out of the goodness of his heart, has supported young Terrence since infancy and treated him in all ways like a son, no substantial consideration of the sort which characterizes the above three Michigan cases has flowed from Terrence to Leroy. As this court understands Michigan law, no contract to adopt can exist without such consideration. Rather than a contract to adopt, the facts of the instant case appear to present the likelihood that a contract to support exists. See Bowins v. English, 138 Mich. 178, 101 N.W. 204 (1904). While this latter case is distinguishable in many regards from the instant case, as Plaintiff has pointed out, it does show that, in the contemplation of the Michigan Supreme Court, there is a difference between a contract to adopt and a contract to support.

Plaintiff has cited the cases of Davis v. Celebrezze, 239 F.Supp. 608 (S.D. W.Va.1965) and Meadows v. Richardson, 347 F.Supp. 154 (S.D.W.Va.1971) which decided, in the absence of any West Virginia law on the doctrine of equitable adoption, that facts similar to those before the court here did give rise to an equitable adoption which operated to entitle a child to child's insurance benefits under the Act. While this court might be inclined to adopt such an approach if Michigan, like West Virginia, had no case law dealing with equitable adoption, such is not the situation, and Michigan law, under the express language of the statute, must control. 42 U.S.C. § 416 (h)(2).

Accordingly, the Hearing Examiner's conclusion that Section 216(h)(2) of the Act did not operate to entitle Plaintiff to child's insurance benefits under Section 202(d) of the Act was correct for the reasons discussed above. The Plaintiff's motion for summary judgment is therefore denied, and the Defendant's motion for summary judgment is granted.

It is so ordered.