The TRAVELERS INSURANCE COMPANY, a Connecticut corporation, Plaintiff,

v.

James A. YOUNG and Tryphena Young Dillard, Defendants,

and

Tryphena Young DILLARD and Norman Dillard, Cross-Plaintiffs,

v.

James A. YOUNG, Cross-Defendant.

Civ. No. 83–CV–2678–DT.

United States District Court, E.D. Michigan, S.D.

Feb. 3, 1984.

Kenneth M. Vest of Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for Travelers Ins. Co.

Stephen C. Cooper of Cooper, Cohen & Elias, P.C., Southfield, Mich., for cross-plaintiffs Tryphena and Norman Dillard.

Phillip R. Reed of Rifkin & Kingsley, P.C., Detroit, Mich., for cross-defendant James A. Young.

MEMORANDUM AND ORDER GRANTING CROSS–DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING CROSS–PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND FOR JOINDER

COHN, District Judge.

This is an interpleader action arising out of competing claims to the proceeds of a policy of life insurance on Albert Young (Albert), who died on March 16, 1983.

Plaintiff Travelers Insurance Company (Travelers) filed a complaint for interpleader, Fed.R.Civ.P. 22, on July 6, 1983 seeking a determination by the court of the relative rights of the interpleader parties to the proceeds of its policy on the life of Albert. I entered an order on July 11, 1983 directing Travelers to deposit the sum of $26,000, the face amount of the policy, with the Clerk of the Court to be placed in an interest bearing account.

Before the court are cross-motions for summary judgment, Fed.R.Civ.P. 56,[1] and cross-plaintiff Norman Dillard's (Norman) motion for joinder, Fed.R.Civ.P. 19. A hearing was held on January 9, 1984, at which time I signed an order distributing half of the proceeds to cross-plaintiff Tryphena Young Dillard (Tryphena), mother of the deceased, and took the remainder of the motions under advisement. For reasons that follow, cross-defendant James A. Young's (James) motion for summary judgment is GRANTED; Norman's motions for summary judgment and for joinder are DENIED.

## I.

### A.

The following facts are undisputed: Tryphena and James were married on June 26, 1959. They had two children, Brenda Young and the deceased, Albert (born January 20, 1961). Tryphena and James were divorced on January 23, 1969. Custody of the children was awarded to the mother who subsequently married Norman. James has resided in North Carolina since 1969 but has maintained contact with his children by phone and visits the children made to North Carolina.

The parties disagree regarding the relationship of the deceased to James and Norman. Norman has filed affidavits which state that he began living with Tryphena in 1967, that they were married in 1972, and that during Albert's youth Norman acted as his "father" and was considered as such by Albert and by their friends and acquaintances. James has filed affidavits stating that he continued after the separation and divorce to be recognized and considered by Albert as his father.

### B.

The relevant part of the insurance policy provides:

*Beneficiary*

Any benefit payable at your death will be paid to:

> Your wife or husband, if living at your death; if not living, to your surviving children, equally; if none survives, to your surviving parents, equally; if none survives, to your executors or administrators.

You may make a different beneficiary designation, or change a previous designation, by doing two simple things:

---

1. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979) *cert. denied,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Watkins v. Northwestern Ohio Tractor Pullers,* 630 F.2d 1155 (6th Cir.1980).

1. Complete the required forms which are available from the Personnel Department or supervisor.

2. Forward the completed forms to the Burroughs Group Insurance Department, Burroughs Place, Detroit, Michigan.

Albert was not married, had no children and did not name a beneficiary. Therefore, the proceeds, under the terms of the policy, are to be paid to his "surviving parents, equally". Norman claims he is entitled to the remaining half of the proceeds as the true father of Albert under the theory of equitable adoption, or alternatively, because it was Albert's intent. James says he, as the natural father, is entitled to the money.

## II.

### A.

■ The Michigan Supreme Court has not ruled whether a parent may inherit from a child under a claim of equitable adoption. A federal court sitting in diversity must make an educated guess in such a situation as to what the state's highest court would decide. *Ann Arbor Trust Company v. North American Company For Life and Health Insurance*, 527 F.2d 526, 527 (6th Cir.1975) *cert. denied*, 425 U.S. 993, 96 S.Ct. 2206, 48 L.Ed.2d 818 (1976); *Chrite v. United States*, 564 F.Supp. 341, 344 (E.D.Mich.1983). Here I must determine whether the Michigan Supreme Court would allow Norman to inherit from Albert, absent a legal adoption.

### B.

Ballantine's Law Dictionary, Third Edition, citing 2 Am.Jur.2d *Adopt* § 16, defines equitable adoption as follows:

> The principle that a contract or agreement to adopt a child, clear and complete in its terms, and entered into by persons capable of contracting, which has been fully and faithfully performed on the part of the child so that relief for him is required as a matter of justice and equity, will be enforced in equity to the extent of decreeing that the child occupy in equity the status of an adopted child, and be entitled to the same rights of inheritance in intestate property of the promisor to which he would have otherwise been entitled had the intended adoption proceedings been legally consummated.

■ Michigan courts have recognized and applied the theory of equitable adoption. See: *Wright v. Wright*, 99 Mich. 170, 58 N.W. 54 (1894); *Roberts v. Sutton*, 317 Mich. 458, 27 N.W. 54 (1947); *Perry v. Boyce*, 323 Mich. 95, 34 N.W.2d 570 (1948); *Steward v. Richardson*, 353 F.Supp. 822 (E.D.Mich.1972); *Blair on Behalf of Brown v. Califano*, 650 F.2d 840 (6th Cir. 1981). However, in every case in which the doctrine has been applied a *child* was claiming benefits and was found to have been "equitably adopted" and therefore entitled to receive the benefits from persons deemed to be "parents". These cases teach us the doctrine is used to create a right of intestate succession in children where there was an effort to adopt which was ineffective due to a failure to meet statutory requirements or where there was an agreement to adopt which the parent failed to perform. No case has been cited which holds that the doctrine of equitable adoption has been used to allow an adoptive parent to inherit all or part of the estate of an equitably adopted child.

In *In re Garlow's Estate*, 313 Mich. 402, 21 N.W.2d 178 (1946), the Supreme Court of Michigan dealt with a fact situation similar to that in the instant case. Equitable adoption was not specifically mentioned by the court. However, in limiting an inheritance to the natural parent from a deceased child (in the absence of a legal adoption), the court implicitly rejected the use of the doctrine of equitable adoption. Of special relevance is the Supreme Court's approval in *Garlow* of an earlier disposition by a California court awarding the insurance proceeds to the deceased's natural mother rather than to the woman who had raised him and acted as his parent, but had failed to complete a legal adoption. 313 Mich. at 406, 21 N.W.2d 178.

## C.

■ Courts in other states, when faced with the question, have similarly concluded that equitable adoption does not allow an adoptive parent to inherit from a child absent a formal, legal adoption. See *Heien v. Crabtree*, 369 S.W.2d 28 (Tex.1963); *In re Jarboe's Estate*, 235 F.Supp. 505 (D.C.Cir. 1964).[2] The Supreme Court of Missouri in *Rumas v. Lighthizer*, 363 Mo. 125, 249 S.W.2d 397 (Mo.1952) explained why an adoptive parent cannot claim rights under equitable adoption:

> An equitable adoption functions to enforce the rights of the child under the agreement to adopt. The child is not chargeable with the adoptive parent's failure to record the deed, and the enforcement in equity of the agreement to adopt should not confer additional rights upon the adoptive parent. The right of inheritance from the child is a different right from that of the child to enforce the agreement to adopt.... A legal or statutory adoption, binding on all persons in accord with the statutory provisions, differs from an equitable adoption, which is based upon contract for the protection of the child and binding on the parties or those in privity with them ....

249 S.W.2d at 401.

## D.

I am of the opinion the Michigan Supreme Court would hold that Norman, the stepfather, could not claim half the insurance proceeds under the theory of equitable adoption. Accordingly, Norman's motion for summary judgment is DENIED.

## III.

## A.

■ Norman also argues that he should receive the proceeds under an intent theory, claiming Albert intended that he be considered his parent for the purpose of benefiting from the policy rather than James, his natural father, and asks the court to reform or "construct" the terms of the policy to achieve this result. The facts in support of this argument are not conclusive. Norman has filed affidavits from friends, relatives and one of his co-workers which indicate that he had a long-standing relationship with Albert, that Albert called him "dad", and that he was known in the area as Albert's "father". James has filed affidavits from relatives in North Carolina which indicate that he had a continuing relationship by telephone and through visits with Albert and his sister, and that he was regarded as the father. Also, it is undisputed that Albert used the last name of "Young" and not "Dillard".

## B.

Ballantine's Law Dictionary, Third Edition, defines "parent" as:

> "The father or mother ... In common parlance, the lawful father or mother by blood."

Relevant portions of the Michigan Probate Code provide:

1) Mich.Stats.Ann. § 27.5009

(1) "Parent", for inheritance purposes, includes a person entitled to take, or who would be entitled to take if the child died without a will, as a parent under this act by intestate succession from the child whose relationship is in question and excludes any person who is only a stepparent, a foster parent, or a grandparent who is not so entitled to inherit.

2) Mich.Stats.Ann. § 27.5110

(1) The permanent termination of parental rights to and concerning a minor child by order of a court of competent jurisdiction, by a release for purposes of adoption by the parent, but not a guardian, to a licensed child placement agency or before a probate or juvenile court, or, ex-

---

**2.** *Jones v. Loving*, 363 P.2d 512 (Okl.1961), a case where an adoptive parent was allowed to qualify for death benefits awarded under the workmen's compensation act as a result of the death of the equitably adopted child, is not to the contrary. In *Jones* the "adoptive" mother was also the natural mother, having taken her son back after an earlier adoption by another family.

cepting termination by emancipation or death by any other process recognized by the law governing the parent-child status at the time of termination, ends kinship between the parent whose rights are so terminated and the child for all purposes of intestate succession.

### C.

In construing a contract of insurance it is the court's responsibility to effectuate the intent of the parties. *Roney v. Federal Insurance Co.*, 674 F.2d 587 (6th Cir.1982). "Under Michigan law, insurance policies are to be construed in a manner consistent with the ordinary and popular sense of the language used therein." *Ford Motor Credit Co. v. Aetna Casualty & Surety Co.*, 717 F.2d 959, 961 (6th Cir.1983). There is nothing ambiguous in the language of the policy. Additionally, the affidavits filed by Norman are simply insufficient to defeat the assumption that the usual interpretation should be given the word "parent" in the beneficiary provision of the policy.[3] "It is well established that an unambiguous contract is not subject to construction and must be enforced according to its terms." *Barner v. City of Lansing*, 27 Mich.App. 669, 671, 183 N.W.2d 877 (1970).

### D.

It is clear that for probate purposes in Michigan a "parent" is the natural parent unless there has been a formal adoption, see Mich.Stats.Ann. §§ 27.5009; 27.5110, *supra*. I find that there is nothing in the record to suggest that Albert did not intend his natural father, James, to be considered his parent for purposes of receiving the proceeds from the insurance policy. The reformation of the policy urged by Norman, twisting the meaning of the word "parent" to allow him to benefit under the insurance policy, would clearly be contrary to established Michigan law. Accordingly, Norman's motion for summary judgment on an intent theory must be denied and

James' motion for summary judgment is GRANTED.

### IV.

■ Norman claims that under Fed.R. Civ.P. 19 he has a right to be joined as an indispensable party. By analogy the Supreme Court's statement in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), is applicable. In *Foman* the Court found that motions to amend should be granted only "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief .... In the absence of ... futility of amendment ... the leave sought should ... be freely given." 371 U.S. at 182, 83 S.Ct. at 230. Here, since Norman is not entitled to any of the proceeds under either of the theories he advances, and James' motion for summary judgment will be granted whether or not Norman is joined, joining him would be futile and under a *Foman* analysis his motion must be denied.

### V.

Tryphena and Norman have filed a motion for protection of the portion of the proceeds to which James is entitled pending appeal, and a supplemental brief in support of their initial motion requesting an evidentiary hearing.

■ Evidentiary hearings are not held in connection with summary judgment motions. *Willetts v. Ford Motor Co.*, 583 F.2d 852, 855 (6th Cir.1978).

However, to protect Norman and Tryphena's rights on appeal the Clerk of the Court is instructed to defer releasing the balance of the proceeds for thirty (30) days following entry of judgment to allow time for Norman and Tryphena to file the necessary papers to perfect an appeal and obtain a stay. See Fed.R.Civ.P. 62.

SO ORDERED.

---

**3.** No evidence was presented as to company records of Burroughs Corp., Albert's employer, or other documents which might have shown a different intent on the part of Albert.