*In re* CROSSMAN ESTATE

BOYES v ATTORNEY GENERAL

Docket No. 77434. Submitted February 20, 1985, at Detroit.—Decided August 20, 1985.

Frank C. Crossman died intestate leaving no known heirs. A petition to commence proceedings for administration of the estate was filed in the Livingston Probate Court and named Crossman's stepdaughters, Lois Boyes, Gwendolyn Roetman and Virginia Erickson, as interested parties. They petitioned the court for a determination that they and their deceased brother, John E. Erickson, who was survived by two children, were Crossman's heirs under the doctrine of "equitable adoption". At the close of the petitioners' proofs, the Attorney General moved for a directed verdict, which was granted, Donald E. Rink, J. Petitioners appealed. *Held:*

1. The Court of Appeals chose to exercise jurisdiction under PCR 801.2(c)(14).

2. Equitable adoption is the principle that a contract or agreement to adopt a child, clear and complete in its terms, and entered into by persons capable of contracting, which has been fully and faithfully performed on the part of the child so that relief for him is required as a matter of justice and equity, will be enforced in equity to the extent of decreeing that the child occupy in equity the status of an adopted child and be entitled to the same rights of inheritance in intestate property of the promisor to which he would have otherwise been entitled had the intended adoption proceedings been legally consummated. It has been used in Michigan to create a right of intestate succession in children where there was an effort to adopt which was ineffective due to a failure to meet statutory requirements or where there was an agreement to adopt which the parent failed to perform. Whether there was an agreement to adopt must be decided on all the facts and circumstances of the case and an agreement may be inferred even in the absence

REFERENCES FOR POINTS IN HEADNOTE

Am Jur 2d, Adoption § 105.

Modern status of law as to equitable adoption or adoption by estoppel, 97 ALR3rd 347.

of direct proof. The record showed an intent on behalf of the decedent to leave his property to his stepchildren but not an intent to adopt them.

Affirmed.

DESCENT AND DISTRIBUTION — EQUITABLE ADOPTION.

Equitable adoption is the principle that a contract or agreement to adopt a child, clear and complete in its terms, and entered into by persons capable of contracting, which has been fully and faithfully performed on the part of the child so that relief for him is required as a matter of justice and equity, will be enforced in equity to the extent of decreeing that the child occupy in equity the status of an adopted child and be entitled to the same rights of inheritance in intestate property of the promisor to which he would have otherwise been entitled had the intended adoption proceedings been legally consummated; whether there was an agreement to adopt must be decided on all the facts and circumstances of the case and an agreement may be inferred even in the absence of direct proof.

*Law Offices of Charles J. Taunt* (by *Michael J. Hughes* and *Marci B. McIvor),* for petitioners.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *A. Michael Leffler* and *Richard L. Hammer, Jr.,* Assistants Attorney General, for respondent.

Before: WAHLS, P.J., and SHEPHERD and E. A. QUINNELL,* JJ.

PER CURIAM. Frank C. Crossman died intestate with no known heirs on December 31, 1982. A petition to commence proceedings for administration of the estate was filed in Livingston County Probate Court and named Crossman's stepdaughters, petitioners/appellants herein, as interested parties. Petitioners sought a determination that they and their deceased brother, John E. Erickson, who was survived by two children, were Crossman's heirs under the doctrine of "equitable adop-

* Circuit judge, sitting on the Court of Appeals by assignment.

tion". At the close of the petitioners' proofs, the Attorney General moved for a directed verdict, which was granted. Petitioners appeal as of right.

On September 10, 1984, this Court *sua sponte* ordered the parties to brief the matter of this Court's jurisdiction. Petitioners argue that this Court has jurisdiction pursuant to MCL 600.861; MSA 27A.861 and PCR 801.2(c)(11), because they are interested parties, the lower court order was final as to them, and the order determined their rights as heirs. Petitioners acknowledge that an equitable adoption would only give them property rights and not make them heirs, but they contend that the technical difference should not be construed to lead to an unjust result. The Attorney General notes that equitable adoption sounds in contract and that this Court could take jurisdiction because the order was one denying specific performance. PCR 801.2(c)(14). See now MCR 5.801(B)(3)(l). We accept jurisdiction under the latter court rule and believe it would be improper to decline jurisdiction merely because petitioners may have argued the wrong basis in their brief. We therefore turn to the merits.

Citing 2 Am Jur 2d, Adoption, § 16, Ballentine's Law Dictionary (3d ed), p 409, defines "equitable adoption" as follows:

"The principle that a contract or agreement to adopt a child, clear and complete in its terms, and entered into by persons capable of contracting, which has been fully and faithfully performed on the part of the child so that relief for him is required as a matter of justice and equity, will be enforced in equity to the extent of decreeing that the child occupy in equity the status of an adopted child, and be entitled to the same rights of inheritance in intestate property of the promisor to which he would have otherwise been entitled had the intended adoption proceedings been legally consummated."

In Michigan, this doctrine has been "used to create a right of intestate succession in children where there was an effort to adopt which was ineffective due to a failure to meet statutory requirements or where there was an agreement to adopt which the parent failed to perform". *The Travelers Ins Co v Young,* 580 F Supp 421, 423 (ED Mich, 1984).[1] Whether there was an agreement to adopt must be decided on all the facts and circumstances of the case and an agreement may be inferred even in the absence of direct proof. *Perry v Boyce,* 323 Mich 95, 100-101; 34 NW2d 570 (1948).

In the instant case the court below ruled that there was no equitable adoption because "[t]here was no testimony to indicate that adoption was ever discussed, and nothing was done by the parties to show an equitable adoption by the decedent". Lois Boyes testifed that, while she had performed services for decedent, she did not expect to be rewarded, paid or adopted. She never discussed with decedent the disposition of his property upon his death. Virginia Erickson also testified that she had not discussed adoption or making a will with decedent. The court noted that decedent had made Lois and Virginia beneficiaries on his insurance policies, so it appeared that decedent

[1] In *Albring v Ward,* 137 Mich 352, 355; 100 NW 609 (1904), the Court required proof of a contract giving a specific interest in property. Void articles of adoption were considered no evidence themselves of such a contract. The Court appears to have shifted grounds, however, in *Roberts v Sutton,* 317 Mich 458; 27 NW2d 54 (1947), where it required only proof of an agreement to adopt; the Court seems to have assumed that an interest in property would naturally follow. It stated on page 468: "We do not hold that plaintiff was adopted, but, rather, that, under the agreement, she ought to have been adopted and that, therefore, with full performance of the agreement on her part, consisting of years of faithful service and filial devotion, she has acquired an equitable interest in the estate of Doctor Carr." For a discussion of the theories underlying the equitable interests in the decedent's estate, see Comment, 47 Mich L Rev 962 (1949).

knew how to make them recipients of his property and had failed to do so.

Our own review of the record reveals the following additional facts. The decedent married the petitioners' mother in 1950. At that time, Gwendolyn was 20 years of age, Virginia was 18 and Lois was 16. Gwendolyn was not living at home but often visited on weekends. Virginia and Lois remained at home approximately two years after the marriage. During that time, they provided some services to decedent, helping with the housecleaning, ironing shirts, fixing meals and washing the car. Decedent referred to petitioners as his children and treated them as such. However, petitioners did not take on the name Crossman.

In 1953, Gwendolyn's wedding invitation listed her as the daughter of decedent. The two always exchanged presents and cards on holidays, birthdays and Father's Day. Decedent guaranteed a loan that Gwendolyn used to finance a trip to Alaska to seek employment there.

The relationship between decedent and Virginia was also like that of father and daughter. They frequently went fishing together and once went bow hunting. Decedent often assisted Virginia financially and helped her move on several occasions. They also exchanged cards and gifts, and Virginia planned and gave a surprise 25th wedding anniversary party for decedent and her mother. Virginia took care of the funeral arrangements when her stepfather died.

Lois had a similar relationship with decedent. Shortly after her marriage, he built her a new garage for her and her husband. He and her mother would babysit her children for extended periods of time. In 1980, he gave her daughter, Sandra, a 1966 automobile.

The evidence is sufficient, assuming an agreement to adopt, to prove a valid consideration flowing from the stepdaughters through their faithful love and affection for the decedent. *Blair v Califano,* 650 F2d 840 (CA 6, 1981). However, we agree with the court below that the evidence fails to prove an agreement or attempt to adopt.

We sympathize with petitioners and agree that the decedent intended to leave his property to them. The court below recognized as much, nothing that decedent had stated on one occasion that he wanted to get things straightened out so that his stepdaughters would get everything. Unfortunately, the decedent did not act upon his expressed intent. Petitioners assign error to the court's exclusion of testimony by Virginia regarding the decedent's further expression of intended disposition of his property. However, no offer of proof or separate record was made, so that, even assuming error, we cannot conclude that prejudice resulted requiring reversal. MRE 103(a). Furthermore, even if there had been more specific proof of the decedent's intention to give his property to the petitioners, that would not be sufficient to show an intent or an attempt to adopt. At most it would show an intent to make a will, an intent that was never acted upon. *Cf. Perry, supra,* p 99.

Affirmed.